Decided April 5, A. D. 1915. Rehearing denied June 7, A. D. 1915.

---

[No. 7506.]

## STOLTZ V. THE PEOPLE.

1. CRIMINAL LAW—*Information—Recitals.* A positive averment is not transformed into a recital by the mere fact that it is preceded by a ''Whereas.'' Whereas may import ''when in fact'' or ''while on the contrary.''

An information for obtaining goods by false pretenses averred that defendants falsely, etc., pointed out and exhibited to the prosecuting witness certain lands, reservoirs, reservoir sites, etc., ''as being'' the properties of a corporation named, and that 2,000 shares of the stock of said corporation constituted a valuable interest in the said lands, reservoirs, and reservoir sites; ''whereas'' the said lands, reservoirs, reservoir sites, etc., were not owned by the corporation, as defendants at the time well knew, and that by means, etc., defendants procured of the prosecutor $200.00 of the moneys,

goods and chattels, etc. *Held* that in view of the provisions of Rev. Stat. sec. 1950 the words of the information, fairly interpreted, constitute a positive averment that the properties designated, etc., were represented by defendants to be the property of the corporation named.

The information averred that the prosecutor, relying upon the false representation set forth and induced thereby, purchased of defendants certain shares in the corporation for $2,000, and as part payment therefor made and delivered to one of them his check for $200, which was thereafter by defendants converted into cash, and to their own use. *Held* to sufficiently show that by the false practice of defendants the prosecutor had been deprived of his property, and suffered a legal injury, and to bring the case within the statute.

2. ——*Fraudulent Pretenses.* One may be actually defrauded without suffering pecuniary loss; and is so defrauded, when by false representations he is induced to part with his property, receiving something substantially different from what he would have received, had the representations been true.

3. —— *Intent—Innocent Belief in the Truth of the Representation.* A corrupt and criminal intent is of the gist of the offense and must be established beyond a reasonable doubt.

4. —— *Immaterial Representations.* Information for obtaining the moneys of the prosecutors by false representation as to the holdings of an irrigating company, and what would be acquired by the purchase of stock therein. The prosecutor deposed that the defendants informed him that a certain ranch and spring were no part of the irrigation project, and that no right therein would be acquired by the purchase of the stock. *Held* that all evidence of representations as to the ranch and spring were immaterial, and should have been stricken out on defendant's motion.

*Error to Delta District Court.* Hon. SPRIGG SHACKLEFORD, Judge.

Mr. MILTON R. WELCH, Messrs. BELL, CATLIN & BLAKE, Messrs. BELL, STIVERS & JORDAN, Mr. L. F. TWITCHELL, for plaintiff in error.

Hon. FRED FARRAR, attorney general, Mr. CLEMENT F. CROWLEY, assistant attorney general, Mr. R. M. LOGAN, district attorney, Mr. JOHN R. CHARLESWORTH, assistant district attorney, for The People.

WHITE, J., delivered the opinion of the court.

Stoltz was convicted of obtaining a bank check of the value of $200 from one Bates, by false and fraudulent pretenses, and prosecutes this writ of error to the judgment entered upon the verdict.

Plaintiff in error insists that the judgment should be reversed for the following reasons:.that the facts as set forth in the information constitute no offense under the law; that the court refused to give to the jury proper instructions requested, and gave improper instructions to defendant's prejudice; and that the evidence was wholly insufficient to sustain the verdict of conviction.

1.   The information charges,. substantially, that C. W. Stoltz and E. B. Morris, knowingly, falsely, fraudulently and feloniously designated and exhibited to Bates certain reservoirs and reservoir sites, a ditch, ranch and spring, and the water and water rights of the said reservoir and ditch, "as then and there being the lands, reservoirs, reservoir sites, ditches, canals, waters and water rights of, belonging to and owned by the said The Robideau-Redlands Ditch and Reservoir Company," a corporation; and designedly, knowingly, fraudulently and feloniously pretended and represented to Bates that two thousand shares of the capital stock of such corporation constituted a valuable interest in and to such property, in proportion that such shares of the capital stock of the corporation sustained to the total number of shares thereof, with intent to obtain from Bates the aforesaid check, and to cheat and defraud him out of the same; that Bates "then and there, relying upon and trusting to the false, fraudulent and felonious pretenses aforesaid, and being induced thereby, did then and there purchase of" Stoltz and Morris the two thousand shares of the capital stock of the aforesaid corporation for $2,000, and as part payment therefor made and delivered to Stoltz his check upon a designated bank for $200, which was thereafter by Stoltz and Morriss converted into cash,

and to their own use; "whereas, in truth and in fact, the said lands, reservoirs, reservoir sites, ditches, canals, waters and water rights," pointed out, designated and exhibited to Bates were not owned by the Robideau-Redlands Ditch and Reservoir Company, and the two thousand shares of the capital stock of said corporation, so purchased by Bates of Stoltz and Morris, did not represent or constitute any interest in the reservoirs, reservoir sites, ditches, waters and water rights so exhibited to Bates, all of which Stoltz and Morris "at the time of the making of the false, fraudulent and felonious pretenses aforesaid" well knew; and Stoltz and Morris "did, by means of the false, fraudulent and felonius pretenses aforesaid," made in the manner and form aforesaid, "unlawfully, knowingly, designedly and feloniously obtain of and from" Bates the check of the value of $200 with intent, him, the said Bates, "then and there to cheat and defraud of the same, contrary to the form of the statute," etc.

It is claimed that the information fails to distinctly allege that defendants represented to Bates that the property shown him was the property of The Robideau-Redlands Ditch and Reservoir Company, and that the negation of the truth of the representations in that regard is only by recital. It will be observed that the averment, as to the representations relating to the ownership of the properties, is preceded by the words "as then and there being," and the negation of such representations, and the allegation of the ownership of the properties are preceded by the word "whereas." Decisions may be found, perhaps, which hold that statements following like words are mere recital, but we think, in the light of the context, that the averments are sufficiently positive and direct to render the information invulnerable to the objection in question. If it could properly said that this information, tested by the technical rules of criminal pleading, is defective in the statement of the

crime charged, it is not so when measured by the statutory rule, sec. 1950, R. S. 1908, prescribing the form of pleading in criminal cases. Every indictment or information is sufficient and good in law which charges the crime substantially in the language of the statute, subject only to those provisions of the national and state Constitutions designed for the protection of life, liberty and property. The language of the information is that defendants pointed out, designated, and exhibited, to Bates certain properties "as then and there being" the properties "of, belonging to and owned by" the said The Robideau-Redlands Ditch and Reservoir company. The use of the words "as then and there being" is unfortunate, but when considered in connection with the words "pointed out, designated and exhibited" and the words "of, belonging to and owned by" as they appear in the information, they do not render the charge fatally defective. We think the language, when fairly considered, constitutes a positive and distinct averment that the property so designated and pointed out was represented by the defendants to the prosecuting witness to be the property of the designated corporation. This is equally true as to the positive nature of the language negativing such representations and alleging the true ownership of the properties. A positive averment is not transformed into a recital by the mere fact that the averment is preceded by the word "as" or "whereas." Whether such effect follows such use of the words depends upon how the words are connected with other portions of the sentence. The word "whereas," as defined in Webster's New International Dictionary, may mean "when in fact," "while on the contrary," and it is clearly so used in this sense in the information in question. Therefore, the language which follows the words, as used, constitutes positive averment and not recital. 22 Cyc. 294; *People v. Ennis*, 137 Calif. 263, 70 Pac. 84.

It is further claimed that as the information fails to

specifically charge loss or damage to Bates, it is fatally defective. We think the offense under the statute, sec. 1849, R. S. 1908, is complete when a thing of value has been obtained, knowingly and designedly from another, by false representations or pretenses, with an intent to cheat or defraud such person of such property, and that it is unnecessary to either charge or prove an actual pecuniary loss or damage. One may be actually defrauded without suffering pecuniary loss, and is so defrauded, when he surrenders his property and receives for it, on account of false representations made to him in order to obtain such property, something substantially different than he would have received had the representations in relation thereto been true. He is then legally injured, for he is deprived of his property, and that which he expected to receive, and of the benefit he expected to accrue from such representations. In this respect an information is sufficient when it sets forth facts which show that the person whose property was obtained by such false representations suffered a legal injury in the above sense. The rule is stated in 19 Cyc. 435, as follows: "An indictment for obtaining property by false pretenses need not allege specifically that prosecutor suffered loss by reason of the false pretense, but it must set forth facts sufficient to show that he suffered a legal injury as that term is understood in the law of false pretense."

2. In order to dispose of the questions based upon the instructions given or refused, it is necessary to briefly consider some of the evidence. In 1903 E. B. Morris,—named in the information as a defendant, but as to whom the proceedings were dismissed at the conclusion of the state's evidence,—and two other persons, filed upon some government land in Montrose County, under the desert land act, and formed a voluntary association to combine their labor and funds to construct an irrigation ditch, and obtain water with which to reclaim their lands. It was subsequently

ascertained that it would require an expenditure of a considerable sum of money to construct the ditch, and it was determined to extend the proposed project to other like government land in the vicinity. Thereafter, in 1906, a corporation was formed with a capitalization of $20,000 under the name of the Escalante Ditch and Reservoir Company. This company filed upon the entire water supply and reservoir sites in the immediate locality, and proposed to irrigate two thousand acres, though there was other government land in the vicinity and other sources of water supply somewhat removed. Nothing further was done at this time, but in March, 1908, the capital stock of the Escalante Ditch and Reservoir Company was increased to $40,000, and a contract entered into with Morris whereby, in consideration of the entire capital stock of the company, he agreed to construct the irrigation system. A few shares of the stock, sufficient to irrigate about 380 acres of land, were sold to parties that had settled upon government land under the irrigation project, among whom was defendant Stoltz, and about $2,000 expended in construction work. The plan was to induce qualified persons to enter desert claims upon government land that could be irrigated from the project, and secure water from the company therefor, as represented by its stock. It soon developed, however, that some parties locating upon the land were making preparations to file upon other available water, and construct an opposition ditch, and that under these conditions the project could not be constructed for the par value of the capital stock without great loss. Thereupon Morris, Stoltz and one Cunningham, who was likewise a stockholder in the Escalante Company, and also its president, filed upon the waters of Cottonwood Creek and other streams, comprising all the unappropriated waters in the watershed, and located, platted and filed upon certain reservoir sites, and a ditch to carry the water to the lands under the Escalante

system and adjacent thereto, the total area consisting of above seven thousand acres. Where it was feasible to carry the water from the point of intersection of the line of their proposed ditch with the right-of-way of the Escalante Company's ditch, they purchased an easement in the latter, and the right to enlarge the same. They thereupon incorporated the Robideau-Redlands Ditch and Reservoir Company, and transferred to it the water rights, ditches and reservoir sites upon which they had filed in their individual names, in consideration of one-half the capital stock of the corporation. Thereupon the Robideau-Redlands Ditch and Reservoir Company entered into a contract with Stoltz and Morris, whereby, in consideration of the balance of its capital stock, they agreed to construct the ditch and reservoirs of the company. These parties, together with Cunningham, testified that the Robideau-Redlands Company was incorporated with the intention of absorbing the Escalante Company; that they owned all of the stock of both companies except about thirty shares in the Escalante Company, and agreed among themselves to consolidate the two companies; that they were advised by their attorneys that they could so consolidate the two companies, and believed they were consolidated by virtue of that agreement; that thereafter no stock of the Escalante Company was sold, and they treated, considered and represented the enterprise and project as the Robideau-Redlands Ditch and Reservoir Company, and expended about $12,000 in actual construction work on the ditch extending along the right-of-way conveyed to it by the Escalante Company; that they never knew or had reason to believe that the two companies were separate entities, after the aforesaid agreement to consolidate, until long subsequent to the transaction forming the basis of this prosecution.

Instruction No. 11, requested by defendant and refused by the court, was as follows:

"The court further instructs the jury that if you believe from the evidence that the defendant and one E. B. Morris owned practically all of the stock of the Robideau-Redlands Ditch and Reservoir Company, and that the said E. B. Morris owned practically all of the stock of The Escalante Ditch and Reservoir Company, and made a verbal agreement to consolidate them, and cease selling stock in The Escalante Company, and represent all of the property of both companies under the name of The Robideau-Redlands Ditch and Reservoir Company, and that all of the representations of defendant as to said ditches, reservoirs and other property being the property of The Robideau-Redlands Ditch and Reservoir Company were made under a belief that he had a legal right to so represent them, then he should be acquitted, though he may have been in error as to such right; or if the evidence raises a reasonable doubt in your minds as to the honesty of his intentions in making such representations, then you should give him the benefit of such doubt and acquit him."

The people seek to justify the action of the court in refusing to give this instruction upon the ground that it is ambiguous, inconsistent, and mis-states the law. They assert that had the proposition embodied therein been set forth in somewhat different language, the court would doubtless have given the instruction. The record does not warrant the assertion. On the contrary, it seems quite certain that the court believed that unless there was a legal consolidation of the two corporations the matter could be of no avail to defendant, notwithstanding his honest belief, based upon advice of counsel, that the companies were, in fact, consolidated. We reach this conclusion from the rulings and remarks of the court, upon the offer of evidence relative to the agreement to consolidate and the belief of the defendant in the matter, and the court's refusal to give other proper instructions upon the question requested by

defendant. However, as to the belief of the court upon this question, or what it might have done in the premises, we are not concerned. The question is, does this instruction set forth the law applicable to the facts of the case, covering a feature thereof not embodied in the instructions given? We think it does. It sets forth the material issues the evidence tended to prove and fairly states the law applicable to the facts. It is the duty of the court, when requested, to instruct the jury upon every point of law pertinent to the issue, and each party has the right to assume any reasonable hypothesis in relation to the facts of the case, and request the court to declare the law applicable thereto. The corrupt and criminal intent of the defendant is the gist of the offense charged; and unless the evidence established such intent beyond a reasonable doubt he had, in law, committed no offense. Therefore, if the evidence raised a reasonable doubt in the minds of the jury as to the integrity or freedom from fraud of defendant's purpose in making the representations, an essential ingredient of the crime charged had not been proven, though it may be that the falsity of the representations, and the reliance and action thereon by the prosecuting witness, was proven.

3. We are not prepared to hold that the evidence was wholly insufficient to support the verdict. It is conceded that after the organization of the Robideau-Redlands Ditch and Reservoir Company and until some time in September, 1909, the defendant and other officers and agents of that company represented that all of the ditches, reservoirs and water rights filed upon by the Escalante Ditch and Reservoir Company were the property of the former corporation. Indeed, this direct statement is embodied in Instruction No. 6 requested by defendant and refused by the court. The undisputed evidence shows that the Robideau-Redlands Ditch and Reservoir Company had acquired by written conveyances the right from the Escalante Ditch and Reservoir

Company to construct, enlarge and use the ditch on the latter's right-of-way from a certain point to the lands in question, and that the ditch shown to the prosecuting witness by the defendant was over and along this line, within the points designated, and at least 90 per cent of the cost of construction thereof had been paid by the Robideau-Redlands Ditch and Reservoir Company. This constituted, in legal effect, ownership in the latter company of such ditch to all intents and purposes. Defendant's representations as to its ownership were, therefore, in no sense false. The instrument of conveyance, however, granting this right does not include the reservoirs of the Escalante Company. If the reservoirs constituted a material part of the irrigation system, we can not say that the prosecuting witness obtained all he expected to obtain, and, therefore, has suffered no legal injury. While the prosecuting witness testified to the making by defendant of the alleged representations as to the ownership of the ranch and spring, the defendant and a disinterested witness who heard the conversation, claim that no such representations were made, but that the statement of defendant relative thereto was to the effect that the company intended to buy the ranch and spring. But, be that as it may, the prosecuting witness testified that defendant informed him that the ranch and spring were in no sense a part of the irrigation project, and no rights were, or could be acquired therein by purchase of the capital stock of the Robideau-Redlands Ditch and Reservoir Company. Such representations were, therefore, wholly immaterial. The defendant moved to strike out all evidence relative to representations as to the ranch and spring, and the court erred in denying the motion. The record clearly shows that defendant did not have a fair trial before a jury properly instructed in the law applicable to the facts of the case. The judgment is, therefore, reversed and the cause remanded.

*Judgment reversed.*

GABBERT, C. J., and BAILEY, J., concur.