(21 App. Div. 124.)

WHITLATCH v. FIDELITY & CASUALTY CO. OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.    October 5, 1897.)

1. CIRCUMSTANTIAL EVIDENCE—CONSIDERATION.

In considering circumstantial evidence it is not proper to segregate the
circumstances into groups, and draw conclusions therefrom. They should
be considered separately and as a whole, giving to each its due weight,
marking its dovetailing with others, and then, from a consideration of the
whole, the conclusion should be drawn.

2. INSTRUCTIONS—REPETITION.

Where the trial court, in charging the jury, lays down the correct rules
of law, and presents every question in the case with sufficient fullness,
· it cannot be required to make a further charge in different language, even
though the request may be correct; and this is so even though isolated ex-
pressions in the general charge might be considered erroneous.                ·

3. DEPOSITIONS—INCOMPETENT EVIDENCE.

Where a separable portion of the answer of a witness in a deposition is
incompetent, the plaintiff cannot be compelled to read it at the trial, as a
condition of reading the other parts of the answer; and, if he is thus forced
to read it, against his objection, and the error may have been prejudicial,
judgment for defendant must be reversed on appeal.

4. RULINGS ON EVIDENCE.

Although a trial court, in passing on a question of evidence, makes its
ruling in the form of an expression of its "judgment," this is, to all intents
and purposes, a ruling, if so intended, and so understood and acted upon
by the parties.

Appeal from trial term.    ·

Action by Josephine Whitlatch against the Fidelity & Casualty
Company of New York.    From a judgment entered on a verdict, and
an order denying a motion for new trial, plaintiff appeals.    Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT,
HATCH, and BRADLEY, JJ.

Thomas Darlington and John L. Hill, for appellant.
Thomas S. Moore and Charles C. Nadal, for respondent.

HATCH, J.    This case has been four times tried.    The first trial
resulted in a verdict for the plaintiff in the sum of $113, which, upon
appeal, the plaintiff procured to be reversed.    The ground of re-
versal was based upon a so-called erroneous charge in the submission
of the case to the jury.    The general term laid down the rule that
the burden of proof to establish intentional injury rested upon the
defendant, and, if the proof failed of showing that the injuries were
inflicted by the act of the deceased, the defense was not established.
Whitlatch v. Fidelity & Casualty Co., 71 Hun, 146, 24 N. Y. Supp.
537.    The second trial resulted in a disagreement.    On the third
trial the plaintiff had a verdict of $10,000.    Upon this trial the court
charged the jury in conformity to the rule established by the general
term, and refused to charge that the burden of proof was upon the

plaintiff to establish by a preponderance of evidence that the death was produced by accidental means, and that deceased was without intention to take his life. Upon appeal this charge was held to be correct, and the judgment entered upon the verdict was sustained. Whitlatch v. Fidelity & Casualty Co., 78 Hun, 262, 28 N. Y. Supp. 951. The defendant thereupon appealed to the court of appeals, and that court reversed the judgment, holding that the burden of proof, under the pleadings, was with the plaintiff to establish by a preponderance of evidence that the death of the deceased was caused by external, violent, and accidental means, in order to authorize a recovery in her favor for more than the sum of $100, secured by the policy to be paid in case of death arising from injuries wantonly inflicted by the deceased. Whitlatch v. Fidelity & Casualty Co., 149 N. Y. 45, 43 N. E. 405. A motion for a reargument was denied. Id., 149 N. Y. 600, 44 N. E. 1129. By stipulation of the parties upon the present trial the issue was limited to the single question, did the death come within the terms of the policy? This left for determination by the jury the question of whether the death was accidental, or whether occasioned by the affirmative, wanton act of the deceased. The jury found that the deceased came to his death by suicide, and assessed plaintiff's damages at the sum of $120. We have carefully read the testimony appearing in the record, and reach the conclusion that the verdict rendered has support in the evidence. We have studied with much interest the ingenious theories advanced by the learned counsel in his brief in support of his contention that the evidence established the death of the plaintiff's intestate by accidental means, or by the hand of another than himself. While we admire the learning, skill, and ingenuity exhibited by the learned counsel in the presentation of his theories, we remain unconvinced by his reasoning. The fallacy of the argument and the theory advanced lies in the fact that it resorts to isolated expressions, makes use of particular portions of the evidence, assumes that the declarations made by the deceased in his letters are true, and that the persons there spoken of exist; and then, joining all these pieces together, works out the theory. This method leaves out a large number of pertinent and material facts. Indeed, it rejects them of necessity, as inharmonious with the theory. It does not, therefore, present the whole case. There has probably never been a case resting upon circumstantial evidence that did not admit of a theory or theories inconsistent with the conclusion to which all the circumstances, taken together, point with more or less accuracy. The strength of circumstances does not lie in segregating them into groups, and drawing conclusions therefrom. Such a course may make them point in many directions. Considered separately, they are no more than a false light. No course, with respect to this character of proof, can be followed with any degree of certainty, nor can results therefrom approximate to accuracy, except by considering such circumstances separately, and as a whole giving to each its due weight, marking its dovetailing with others, and then, from a consideration of the whole, drawing the conclusion. Any other rule destroys its value as evidence. To uphold the theory advanced by the plaintiff would require us to give

force and effect to a part alone; and, not alone this, but also to reject facts and circumstances, and the inferences arising therefrom, which naturally lead the mind to the conclusion that this death was a suicide. It would require the defendant to establish with more certainty the cause of death than the law requires to forfeit a man's life for the crime of homicide. The courts have condemned the basis of such theories as the counsel now calls to our attention, and have commended the view which we have expressed. Allen v. Allen, 101 N. Y. 658, 5 N. E. 341. It is not needful that we present an analysis of the evidence that tends to show that the intestate came to his death by his own hand. It is certainly as strong as are the circumstances to which the plaintiff invites our attention; and, if this be so, then the case would present conflicting inferences, and a question which it is the province of the jury to answer. They have answered in this case adversely to the claim of the plaintiff, and we are bound by such conclusion. We find no error in the charge of the court. It followed the rule laid down by the court of appeals, and presented every question in the case with sufficient fullness. Having done this, the counsel could not require the court to make a further charge, in different language, even though the request might be correct; and this is so even though isolated expressions in the general charge might be considered erroneous. Smith v. Matthews, 152 N. Y. 152, 46 N. E. 164; Gillespie v. Railway Co., 12 App. Div. 501, 42 N. Y. Supp. 245. In the present case the counsel complains that by charging a part of his requests and refusing the others the jury were misled. This is to say that the court destroyed the elaborate theory which was presented by the plaintiff's requests to charge. We do not think that the plaintiff can complain, even though his theory be destroyed, if the court fully submitted the questions which the case required; and this-it seems to have done. The requests which were refused were in the nature of an argument in support of a theory, which the court was not required to adopt, and which were not essentially needful to enable the jury to dispose of the questions involved. We think no error was committed, either in the charge as made or in the refusal of the requests to charge.

We should find no difficulty in affirming the judgment in this case, were it not for the fact that a fatal error was committed upon the trial in compelling the plaintiff to read the whole of an answer contained in the deposition as a condition of reading any part of it. This matter arose in this wise: The question in the deposition was: "About how far down the bed? A. The hand was lying out about as far as the index finger would reach. It was lying about that distance on the barrel of the muzzle [pointing to the first joint of the index finger], *and so I hold that he must have held his right hand up this way, and held the barrel with his left* [illustrating]. I was the first one that got in the room, and I noticed that." Counsel for the plaintiff insisted on omitting that part of the answer we have italicized. Counsel for the defendant objected to leaving this part of the answer out, stating that: "He must read all his answer, or take none of it. The Court: If you read part of the answer, my judgment would be you would have to read it all, or leave it all out."

The plaintiff excepted to the ruling. Subsequently the plaintiff read the whole answer, with the statement that he did not intend to thereby waive his exception. There can be no question but that the particular point which was here presented was fully understood by the court and by both counsel; and the language used by the court, while expressed in the form of his judgment, was to all intents and purposes a ruling upon the question presented. Counsel and court understood that the plaintiff, if he read any part of the answer, was compelled to read the whole; and it was to this ruling that the plaintiff's exception was taken. The question is, therefore, fully presented. The ruling was wrong. Gellatly v. Lowery, 6 Bosw. 113; Parmenter v. Railway Co., 37 Hun, 354; Smith v. Crocker, 3 App. Div. 471, 38 N. Y. Supp. 268. The error was prejudicial, or may have been. That part of the answer which was objected to did not state any fact. It expressed an opinion as to how the shooting could have been done, and was a statement of the particular theory held by the witness to account for the wound and the death of the deceased. It was incompetent as testimony, and could not have been read by the defendant if omitted by the plaintiff, unless the latter consented. If accepted by the jury, it accounted for the death by showing that it was suicidal, and consequently settled the case in favor of the defendant. The ruling, therefore, forced the plaintiff to read incompetent testimony, which went to the extent of determining the case adversely to his contention, and, in effect, affixed a penalty for reading that which was competent, and to which he was clearly entitled.

For this error the judgment should be reversed, and a new trial ordered; with costs to abide the event. All concur.