## SECURITY TRUST & SAVINGS BANK, APPELLANT, *v.* RESER ET AL., RESPONDENTS.

(Nos. 4,186, 4,192.)

(Submitted September 20, 1920. Decided November 15, 1920.)

[193 Pac. 532.]

*Judgments—Rendition and Entry—Clerk of District Court—Dismissal for Failure to Enter—Law of Case.*

Judgments—Entry by Clerk—When Unauthorized.

    1. Upon lodgment of the findings of fact and conclusions of law of the trial judge in a foreclosure suit with the clerk of the district court, the extent of the latter's duty was to file them, and therefore his subsequent act in formulating a judgment and entering it at the request of counsel for the plaintiff was unauthorized and void.

Appeal and Error—Law of Case.

    2. The principles announced by the supreme court in annulling on *certiorari* the unauthorized entry of judgment in an equity case was the law of the case on a subsequent appeal from a judgment dismissing the action for failure to have judgment entered within the six-months period prescribed by section 6714, subdivision 6, of the Revised Codes.

Judgment—What Constitutes.

    3. The announcement of the ultimate conclusion of the court upon the issues submitted and a direction to the clerk to enter it constitute its judgment; until these things are done, the clerk has no right to enter judgment.

Same—Unauthorized Entry—Dismissal for Failure to Enter.

    4. Where the clerk of the district court entered a final decree in a foreclosure suit, though the court had done no more than lodged with him its findings of fact and conclusions of law, there was no rendition of judgment, entry of which the successful party could demand, and hence his failure to demand it within six months after the clerk's unauthorized entry thereof did not constitute that neglect which warrants dismissal of the action under section 6714, Revised Codes.

*Appeal from District Court, Blaine County, in the Eighteenth Judicial District; John A. Matthews, Judge of the Fourteenth District, Presiding.*

ACTION by the Security Trust Savings Bank of Charles City, Iowa, against Evert Reser and others. Plaintiff appeals from a judgment of dismissal and from an order refusing to set aside said judgment. Reversed.

*Messrs. M'Kenzie & M'Kenzie,* for Appellant, submitted a brief.; *Mr. John M'Kenzie, Sr.,* argued the cause orally.

No appearance in behalf of Respondents.

MR. JUSTICE COOPER delivered the opinion of the court.

Consolidated appeals, one being from a judgment of the district court of Blaine county dismissing plaintiff's action because of its failure and neglect to procure the entry of a judgment in its favor within the six-months period prescribed by subdivision 6 of section 6714 of the Revised Codes, and the other from an order refusing to set aside said judgment.

Upon receipt of the findings of fact and conclusions of law, prepared by the Honorable John A. Matthews, the presiding judge, the clerk of the district court, without express direc-tion or pronouncement by the court, on request of plaintiff's attorneys, filed and entered what purported to be a final judg-ment of foreclosure of mortgages covering the property described in the pleadings. The action of the clerk in proceed-ing further than the filing of the findings was declared a nul-lity. (*State ex rel. Reser* v. *District Court,* 53 Mont. 235, 163 Pac. 1149.) On April 9, 1917, after the decision of this court, the plaintiff gave notice to defendants that on May 8, 1917, it would move that judgment be entered *nunc pro tunc* as of July 12, 1916, the day upon which the clerk of the court undertook to enter judgment in the case. The Honorable W. B. Rhoades, the judge of that district, because of the fact that Judge Matthews had tried the cause and had transmitted to the clerk his findings of fact and conclusions of law, de-clined to entertain the motion. Later, on the sixteenth day of June, 1917, the attorneys ·for the plaintiff served upon the defendants and their counsel a notice that it would, on July 20, 1917, move the court and Honorable John A. Matthews that the findings made by him and filed be ordered refiled as of the date of the, filing thereon, to-wit, July 8, 1916, and that judgment be signed and filed in conformity with such

findings of fact and conclusions of law and filing, as of July 12, 1916, the date when the clerk of the court attempted to enter judgment in the cause. The ground upon which the motion was to be made was that the plaintiff was entitled to have judgment rendered and entered upon the findings of fact and conclusions of law as made by Judge Matthews, and that no judgment had as yet been entered. On August 10, 1917, the matter was presented to Judge Matthews, who was presiding at the time on the invitation of Judge Rhoades, and the 'motion denied. Thereupon a motion was made by defendants to dismiss the action because the plaintiff had neglected to have judgment rendered by the court and entered by the clerk in accordance with the Code section above referred to. | This motion the court sustained and dismissed the action. Hence these appeals.

When the findings of fact and conclusions of law prepared [1, 2] by Judge Matthews were received by the clerk it became his duty to file them. (Rev. Codes, sec. 6763.) This the clerk did. Having reached this stage of the proceeding, what final steps were necessary to exhaust the judicial power, complete the trial, and make the proper entries? The acts of the clerk in formulating and entering judgment upon the court's findings—assuming them to be the last judicial utterance and expressive of its final decision—were declared by this court to be void—an attempt upon the part of a ministerial officer' to perform judicial functions. In this situation there had been no rendition of judgment, no deliverance of final judgment upon the merits, and no judgment to enter. The judgment of the court is its pronouncement upon the issues submitted; the record being merely historical and evidentiary. (*State ex rel. Anderson* v. *District Court,* 56 Mont. 244, 184 Pac. 218.) Mr. Justice Sanner, expressing the views of this court upon the former hearing, pointed out the fundamental difference between judicial and ministerial functions, and the varying processes by which decrees in equity and judgments at law are reached, decreed and entered, and stated principles which must

now be regarded as the law of this case and our guide in disposing of it. He proceeds thus:

"Judgments, like the causes of action from which they spring, are either at law or in equity—the latter, for purpose of instant distinction, being commonly termed 'decrees,' and between the two classes great and fundamental differences exist. A judgment at law is absolute, inflexible, expressive of the invariable rules of law applicable to the established facts in issue, taking no note of the situation of the parties or the means of enforcing the liability declared by it. A decree, on the other hand, is seldom predetermined as to its terms, by the general decision for or against the plaintiff or the defendant; it stands upon the particular merits of the controversy as they impress themselves upon the conscience of the chancellor, guided by principles broader than those of the law; it is the decision of the man who frames it as the interpreter of the moral standard which equity sets up; it is adjustable to all the exigencies of the litigation and to all the degrees of right or merit by which the parties may be distinguished, and it may, as often happens, contain specific directions for carrying out its purposes, provisions fixing the status of the parties, or prescriptions touching their course of conduct. (Freeman on Judgments, sec. 9; Black on Judgments, sec. 1; *Broder* v. *Conklin,* 98 Cal. 360, 364, 33 Pac. 211.) The application of these distinctions and their consequences are made manifest by the circumstances of this case. No such decree as the one before us was commanded by the finding in point of fact or followed from them as a necessary inference."

In the recent case of *McIntyre* v. *Northern Pac. Ry. Co.,* **[3]** *ante,* p. 256, 191 Pac. 1065, Chief Justice Brantly, in defining the proper practice governing the rendition and entry of judgments, states: "The announcement of the decision by the judge in open court and the entry of it in the minutes constitute the rendition of the judgment. In equity cases, if the decision is general or the findings are not accompanied by conclusions of law embodying specific directions as to the

adjustment of the rights of the parties, the clerk has no authority to enter the judgment. In assuming to do so, he assumes to perform judicial functions, whereas his duty in this respect is ministerial. He may not act at all until the terms of the judgment have been fully fixed by the court.''

While in this case the court fixed the status of the parties [4] and ordered the clerk to file its findings, it made no formal announcement that they imported finality and constituted rendition of judgment. If the findings as prepared and filed were incomplete, defective or unresponsive to the issues, it was still open to counsel to move their amendment or correction in either or all respects. No suggestion or motion of this character appearing in the record, we must assume that none were interposed. Upon this showing, the failure of the court to render judgment in accordance with its findings cannot be characterized as an omission of the plaintiff—as neglect to have judgment entered for more than six months after final decision. The decision the parties invoke when they submit their rights to the court for determination includes every judicial step or requisite act to final judgment upon their rights. ''Final judgment'' means the finish of the judicial labor, pronouncement of the ultimate conclusion of the court upon the case, and a direction to the clerk to enter judgment. Until these things are done, the case is still in process of judicial determination, and not ripe for the entry of judgment, because judgment has not yet been rendered.

From a reading of the statute, it is manifest that its purpose is to bring an end to litigation by compelling the prevailing party to have judgment entered; and, the more effectually to impel that end, dismissal of the action is visited upon the successful party if he permits six months to pass between the rendition and the entry of the judgment in disregard of its provisions. Until the time limit between the two distinct and dissimilar acts has passed, the running of the statute has not commenced, and the successful party cannot be charged with the neglect the statute punishes. Forfeitures are not favored, unless by a strict application of the statute justice

can be done in no other way.   An abandonment of the fruits of victory cannot be imputed to one who did not know of his victory and whose failure was unintentional and excusable. (*Rule* v. *Butori*, 49 Mont. 342, 141 Pac. 672.   See, also, *Soliri* v. *Fasso*, 56 Mont. 400, 185 Pac. 324.)   The present action falls within the class of cases in which no judgment has ever been rendered, but which, so far as the plaintiff could make it, is in condition for the rendition of final judgment. (Freeman on Judgments, sec. 57.)   The failure of plaintiff to have judgment entered was not imputable to negligence on its part, but was due to the failure of the court to render final judgment.   In this condition of the record, Judge Matthews, at the end of his consideration of the case, should have ordered judgment entered.   This we believe he intended to do, as the making of the order dismissing the action indicates.

The judgment and order are therefore reversed, with directions to the district court to render and have judgment entered *nunc pro tunc* in accordance with the motion of the plaintiff in that behalf.

*Reversed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLOWAY and HURLY concur.

MR. JUSTICE MATTHEWS, being disqualified, takes no part in the foregoing decision.