## STATE, RESPONDENT, *v.* FRANCIS, APPELLANT.

### (No. 4,474.)

(Submitted November 22, 1920. Decided December 13, 1920.)

[194 Pac. 304.]

*Criminal Law — Grand Larceny — Circumstantial Evidence — Instructions—Practice—Nunc Pro Tunc Orders—Invalidity —Fugitive from Justice.*

Criminal Law—Practice—*Nunc Pro Tunc* Order—Definition.
    1. A valid *nunc pro tunc* order is one which should have been made at an earlier date and which, therefore, courts may cause to take effect as of the date when it should have been made.

Same—Motion for New Trial—*Nunc Pro Tunc* Order—Invalidity—Fugitive from Justice.
    2. Where defendant, after being found guilty of crime, became a fugitive from justice, a *nunc pro tunc* order made on surrendering himself some sixteen months later, and long after the time for perfecting his motion for new trial had expired, extending the time for filing his bill of exceptions and affidavits, *held* of no effect and that the motion for new trial was properly denied.

Same—Appeal—Record—Errors Reviewable.
    3. Under section 9416, Revised Codes, defendant, on appeal from the judgment of conviction, may, by bill of exceptions, bring before the court errors in the decision of questions of law arising during the course of the trial; exclusive of those embraced within the provisions of the statute providing for new trials.

Same—Instructions—Preponderance of Evidence—Error.
    4. An instruction on "preponderance of the evidence" has no place in a criminal trial, the defendant being required to do no more in the way of evidence in his behalf than introduce sufficient to raise a reasonable doubt of his guilt.

Same—Instructions—Circumstantial Evidence—To be Viewed as a Whole.
    5. An instruction offered by defendant on the law of circumstantial evidence to the effect that if there was any single fact proved to the satisfaction of the jury inconsistent with his guilt, acquittal should follow, was correctly refused, since the jury must draw its conclusion from the circumstances relied upon for conviction as a whole, and if then they are inconsistent with any rational hypothesis other than his guilt, a verdict of guilty may follow.

Same—Failure of Defendant to Offer Proper Instruction—Effect.
    6. Under section 9271, Revised Codes, it was the duty of defendant to offer a correct instruction on the law of circumstantial evidence, failing in which he was in no position to complain of omission to instruct the jury on that point.

Escape of person convicted of crime as affecting his proceedings for review, see notes in 3 Ann. Cas. 512; 13 Ann. Cas. 497.

Instructions on issue of circumstantial evidence in criminal cases, see note in 97 Am. St. Rep. 789.

Necessity that circumstantial evidence, to convict of crime, must exclude every reasonable hypothesis except guilt of defendant, see note in Ann. Cas. 1913E, 428.

Same—Circumstantial Evidence—When Instruction Required—Theory of Case.

7. The necessity for an instruction on circumstantial evidence arises only in cases depending entirely on such evidence; hence where counsel for defendant conceded on the trial that it was not the theory of the defense that the case depended upon circumstantial evidence alone, refusal of an instruction was not error.

Same—Destruction of Evidence by Defendant—Evidence—Admissibility.

8. Testimony tending to show destruction or suppression of evidence by defendant, though incidentally having reference to a separate offense, may be shown as a circumstance tending toward his guilt.

Same—Failure to Offer Instruction—Presumptions.

9. Defendant, not having offered an instruction as to the purpose for which the testimony last above mentioned was received, must be presumed to have been satisfied that none was necessary, and was therefor in no position to complain of failure to instruct thereon.

*Appeal from District Court, Hill County; W. B. Rhoades, Judge.*

GEORGE FRANCIS was convicted of grand larceny and appeals from the judgment. Affirmed.

*Mr. O. W. McConnell* and *Mr. J. P. Donnelly,* for Appellant, submitted a brief; *Mr. McConnell* argued the cause orally.

This is a case where the state relied absolutely upon circumstantial evidence. The eye of no witness saw the taking nor did human lip testify to any actual taking. Nor were the facts and circumstances testified to in such juxtaposition to the main fact, in this case, to the fact of the taking, so as to take the case outside of the rule of circumstantial evidence. (*Alderman* v. *State* (Tex. Cr.), 23 S. W. 685; *Guerrero* v. *State,* 46 Tex. Cr. 445, 80 S. W. 1001.) It was the duty of the court in this case to instruct on circumstantial evidence.

It is especially true that the jury in this case should have been so instructed because on their examination on their *voir dire* it is disclosed that eleven of them had never before sat upon a jury in a criminal case. No such instruction was given. Even if the defendant had not asked for such an instruction, the court, of its own motion, should have given the instruction relating to circumstantial evidence. (Underhill on Criminal Evidence, sec. 6; Wharton's Criminal Evidence, 19th ed., sec. 876; *Hamilton* v. *State,* 96 Ga. 301, 22 S. E. 528;

*Bowen* v. *State,* 140 Ala. 65, 37 South. 233; *People* v. *Dick,* 32 Cal. 213; *State* v. *Calder,* 23 Mont. 504, 59 Pac. 903; *State* v. *McKnight,* 21 N. M. 14, 153 Pac. 76; *Colbert* v. *State,* 125 Wis. 423, 104 N. W. 61; *State* v. *Moxley,* 102 Mo. 374, 14 S. W. 969, 15 S. W. 556; *Wantland* v. *State,* 145 Ind. 38, 43 N. E. 931.)

The information in this case charges the defendant with the larceny of a bay mare on the first day of March, 1915. Upon this information the defendant was arraigned, entered his plea of not guilty and proceeded to trial. Evidence was introduced on behalf of the state relative to the larceny of the bay mare on March 1, 1915. But after the state had rested its case and the evidence of the defendant had been introduced, the state was permitted to introduce proof of another larceny said to have been committed on the fourth day of November, 1917, of the same bay mare. This testimony was introduced in rebuttal by the state over the objection of the defendant. The court permitted testimony of two separate and distinct takings of the same animal—the testimony of the second taking entirely rebuttal testimony and no part of the state's case in chief.

This court has laid down the rule that the information can charge but one offense, and that the defendant can be convicted only of the offense charged. The state cannot prove two or more offenses as such and then select any one of them as the one for which conviction will be sought. The purpose of this is to separate the evidence of the crime charged from that which is merely corroborative by identifying the act which was from the beginning intended to be charged, and to destroy the possibility of conviction of any other. It necessarily precludes the notion that a conviction can be had for any act other than the one intended from the beginning to be charged. "It follows, too, that when the information fixes a day, and the evidence shows an act of the character charged as a crime at that time, the state cannot be allowed to claim a conviction under that information for a similar act at some other time." (*State* v. *Gaimos,* 53 Mont. 118, 124, 162 Pac. 596.)

*Mr. S. C. Ford,* Attorney General, and *Mr. A. A. Grorud,* Assistant Attorney General, for the state, submitted a brief; *Mr. Grorud* argued the cause orally.

The court was clearly right in refusing the instruction on circumstantial evidence, for the reason that but a very small part of the evidence in this case, if any, was circumstantial. The fact that the mare was feloniously taken from the possession of Clack is clearly established by the testimony of Avery and other witnesses; that the fact that the animal came unlawfully into the possession of the defendant is also clearly established by the evidence in the case; and that the facts connecting the defendant in this action with the larceny were clearly shown by the statements of the defendant himself. (*People* v. *Burns,* 121 Cal. 529, 53 Pac. 1096; *People* v. *Lonnen,* 139 Cal. 634, 73 Pac. 586.) Although no witness testifies to the actual taking, yet the criminative circumstances may be in such "juxtaposition to the main fact" as to be equivalent to direct testimony. Under such circumstances the case is not wholly dependent upon circumstantial evidence, and hence there is no necessity of a charge thereon. (*Bennett* v. *State,* 32 Tex. Cr. 216, 22 S. W. 684; *Scott* v. *State* (Tex. Cr.) 23 S. W. 685.)

The defendant argues that evidence of two separate offenses was permitted to go to the jury, and bases his contention on the fact that the information which the defendant was tried under charged the defendant with larceny of a bay mare on the first day of March, 1915, and the trial court permitted the state to introduce proof of another larceny of the same bay mare which was committed on the fourth day of November, 1917. The testimony in regard to the larceny which took place on November 4, 1917, was introduced in rebuttal to refute the testimony of the defendant, no objection being made to its introduction. Where evidence is clearly rebuttal, the one offering it is entitled to have it admitted, and its exclusion is error (*Anaconda Copper Min. Co.* v. *Heinze,* 27 Mont. 161, 69 Pac. 909; *Glenn* v. *Stewart,* 167 Mo. 584, 67 S. W. 237), even though the rebutting testimony would not

have been admissible on direct examination. (*Ankersmit* v. *Tuch,* 114 N. Y. 51, 20 N. E. 819.)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

On February 28, 1918, George Francis was found guilty of the crime of grand larceny. The trial court thereupon set March 4, at the hour of 9:30 A. M., as the time for pronounce-ment of judgment on the verdict, permitting the defendant to remain at large under his bail of $2,000 theretofore given. On March 1, 1918, through his attorneys, defendant served and filed notice of motion for a new trial. At the time appointed the court convened and continued the matter of pronouncement of judgment until March 6, 1918, and allowed the defendant thirty days' additional time "for filing bill of exceptions and filing notice of motion for a new trial." The court thereupon required the defendant to furnish an additional bail bond in the sum of $5,000 before 3 P. M. of the same day, at which hour, the bond not having been filed, the court issued a bench warrant for the defendant. It was then discovered that the defendant could not be found. On March 6 the court made a minute entry to the effect that the defendant was called and failed to appear and his bail in the sum of $2,000 is therefore forfeited.

No further proceedings were had in the case until July 8, 1919, when the court made and filed the following order:

"Whereas, the defendant, George Francis, has failed to come into court for pronouncement of judgment upon the verdict of the jury rendered in this case, and has failed to render himself in execution thereof, the defendant's bail in the sum of $2,000 has been ordered forfeited.

"It is ordered that the official reporter of this court be and he is hereby directed not to furnish a transcript of the evidence in this case to any one, and all further proceedings in this case are stayed until the defendant renders himself in execution of judgment.

"The time for the filing of a bill of exceptions and affidavits on motion for a new trial is hereby extended for ten

days after rendition of judgment in this case. This order shall take effect *nunc pro tunc* as of March 6th, 1918."

"Filed July 8, 1919.

"W. B. RHOADES, Judge."

On the same day the defendant surrendered himself to custody, and the court pronounced judgment sentencing him to from six to twelve years in the state. penitentiary.

On July 17, pursuant to the *nunc pro tunc* order, defendant's draft of a bill of exceptions was served and numerous affidavits in support of the motion for a new trial were filed. No new notice of motion was filed, the defendant relying on his notice of March 1, 1918. The bill of exceptions was later, over the objection of the state, settled and allowed, and the motion submitted and denied. The appeal is from the judgment and from the court's order denying defendant's motion for a new trial.

1. The defendant's right to move for a new trial is dependent [1, 2] upon the validity of the *nunc pro tunc* order, for, in its absence, the time in which defendant could perfect such a motion had long since expired.

"*Nunc pro tunc*" means, literally, "now for then," and a valid *nunc pro tunc* order is one which, for some good reason, should have been made at an earlier date, and which, therefore, the court may cause to take effect as of the date when it should have been made. The circumstances under which this may be done in this jurisdiction are concisely stated in *Power* v. *Lenoir,* 22 Mont. 169, 56 Pac. 106, as follows: "The court may, in all proper cases, enter orders and judgments *nunc pro tunc.* * * * The cases in which the court will do this are of two classes: The first consists of those in which one of the parties dies after the verdict has been rendered, or the cause submitted for decision, and it is necessary to enter the judgment as of the date of the submission of the cause, to prevent injustice. * * * The second class is composed of those cases where an order or judgment has actually been made or rendered by the court, but, by reason of some

misprision for which the parties are not entirely to blame, has never been entered.''

In the case of *Security Trust & Savings Bank* v. *Reser, ante,* p. 501, 193 Pac. 532, this court held that where a judgment should have been entered at a date certain, and the court failed to do so, a *nunc pro tunc* judgment should be entered as of such date, for the failure was not imputable to negligence on the part of the plaintiff.

It has been repeatedly held that, where it appears on appeal that the defendant is a fugitive from justice, the appeal will be dismissed. (3 Ann. Cas. 512, note.) The reason assigned generally for such action is that, by voluntarily failing to appear and assert his rights under the Constitution, the defendant is deemed to have waived those rights. (*Commonwealth* v. *Andrews,* 97 Mass. 543.) This court has, however, declared on the subject as follows: ''The prevailing rule seems to be, however, not to make the order of dismissal final until the defendant has had an opportunity to surrender himself to the proper custody and submit to the jurisdiction of the court. We adopt this as the better rule.'' (*State* v. *Dempsey,* 26 Mont. 504, 68 Pac. 1114.) In the case of *People* v. *Genet,* 59 N. Y. 80, 17 Am. Rep. 315, cited in the *Dempsey Case,* the court held, in refusing a writ of mandate to compel the settlement of a bill of exceptions, that ''When a person charged with felony has escaped out of custody, * * * the courts will not give their time to proceedings which, for their effectiveness, must depend upon the consent of'' such person.

It would seem, then, that, had counsel for defendant sought to have a bill of exceptions on motion for a new trial settled and to file affidavits in support of the motion, the court would have been justified in refusing to proceed; in fact, it would have been the court's duty to so dispose of the application and to strike from the files the affidavits. However, by analogy with the rule laid down in the *Dempsey Case,* the court might, while the matter was thus before it, have made such an order as that of July 8, on condition that the defendant should, within a reasonable time fixed in the order, return to the

jurisdiction and surrender himself to custody, as was done in that case. But nowhere in the order of July 8 does it appear that such an order was made on March 6, 1918, or that the so-called *nunc pro tunc* order was to take the place of an order which should have been entered in the minutes of that date. In fact, the minute entries negative any such idea. In the absence of any steps taken by counsel, the court should presume that, the defendant having fled the jurisdiction of the court, he and his counsel had abandoned his motion for a new trial.

The situation in which the defendant found himself on July 8, 1919, was brought about solely by his own wrongful, voluntary and contemptuous act in defying the authority of the court; it cannot by any stretch of the imagination be said to have resulted from any dereliction on the part of the court, nor can it be said that relief was then necessary to prevent injustice being done. To allow the defendant at that late date to evade the consequences of his own wrongful act would be tantamount to permitting him to take advantage of his own wrong in violation of section 6185 of the Revised Codes.

Even if we were to resort to the fiction that the order was made on March 6, 1918, but "by reason of some misprision" did not appear in the minutes of that date, the court would stultify itself by the tacit holding that sixteen months was a reasonable time in which the defendant might purge himself of contempt by returning.

It is therefore clear that no error was committed in denying the motion for a new trial, as there was no proper motion before the court.

2. However, the bill of exceptions was before the court for such purposes as it may be used on an appeal from the judgment, for section 9340, Revised Codes, provides for the presentation of a draft of a bill of exceptions, on two days' notice to the county attorney, within ten days after *judgment,* and this provision was complied with.

Section 9416 provides that "Upon an appeal taken by the [3] defendant from a judgment, the court may review any

intermediate order or ruling involving the merits, or which may have affected the judgment."

This section is carried forward from the Annotated Codes of 1895, where it bore the number 2321, which section was interpreted, in *State* v. *O'Brien*, 18 Mont. 1, 43 Pac. 1091, 44 Pac. 399, to permit the defendant to bring before the court on an appeal from the judgment alone, by bill of exceptions, errors in the decision of questions of law arising during the course of the trial, exclusive of those errors which "are embraced within any of the provisions of the law made for granting new trials." Applying the rule thus laid down, we have presented for our consideration the following specifications of error:

(a) The court erred in refusing to instruct on the law of circumstantial evidence.

(b) It was error on the part of the court to admit evidence of two separate and distinct offenses.

(c) The court erred in not instructing the jury as to the purpose for which evidence of another offense than that charged in the information was permitted to be introduced.

Taking these up in the order stated:

(a) The defendant requested the court to give the following instruction:

"III A. The jury are instructed that, in cases of circumstantial evidence, the case before you being of that character, the jury must not only be satisfied beyond a reasonable doubt that all the circumstances proved are consistent with the defendant having committed the act, but they must also be satisfied that the facts are such as to be inconsistent with any other rational conclusion than that the defendant is guilty. If there is any one single fact in this case proved to the satisfaction of the jury by a preponderance of the evidence, which is inconsistent with the defendant's guilt, that is sufficient to raise a reasonable doubt and the jury should acquit the defendant."

The exception to the court's refusal to give the requested instruction is that it "correctly states the law of circumstantial evidence, and that this case is based almost entirely upon such evidence." As declared in *State* v. *Postal Tel. Cable Co.*, 53

Mont. 104, 161 Pac. 953: "It is the rule in this state * * * that, where a conviction is sought upon circumstantial evidence alone, the circumstances proved must not only be consistent with each other and with the hypothesis of defendant's guilt, but inconsistent with any rational hypothesis other than his guilt." The trial court was informed by counsel, by their exception, that it was not the theory of the defense that the case depended upon circumstantial evidence alone, but that the case was based "almost entirely upon circumstantial evidence."

The latter part of the instruction offered is faulty in two particulars: First, it assumes that facts may be proven by a [4] preponderance of the evidence. An instruction on "preponderance of the evidence" has no place in a criminal trial (*State* v. *Felker,* 27 Mont. 451, 71 Pac. 668); all that is required is that the evidence introduced on behalf of the defendant is sufficient to raise a "reasonable doubt" of his guilt (*State* v. *Powell,* 54 Mont. 217, 169 Pac. 46). But this is unimportant, as the offered instruction but laid a heavier burden on the defendant than does the law. The second is that [5] the instruction does not correctly state the law of circumstantial evidence. The rule as to circumstantial evidence is that the circumstances proven to establish guilt must be taken as a whole; and if, considered as a whole, they are "inconsistent with any rational hypothesis" other than the defendant's guilt, they are sufficient to warrant a verdict of guilty.

The jury is not permitted to single out, as suggested by the offered instruction, "any one single fact" appearing anywhere in the evidence, and say, "Here is a circumstance which is inconsistent with the defendant's guilt." If such were the law, it is improbable that conviction could ever be had on circumstantial evidence. Thus, in *Whitlatch* v. *Fidelity etc. Co.,* 21 App. Div. 124, 47 N. Y. Supp. 331, the court said: "There has probably never been a case resting upon circumstantial evidence that did not admit of a theory or theories inconsistent with the conclusion to which all the circumstances, taken together, point with more or less accuracy. The strength of circumstances does not lie in segregating them into groups and drawing conclusions therefrom. Such a course may make them

point in many directions. Considered separately, they are no more than a false light. No course with respect to this character of proof can be followed with any degree of certainty, nor can results therefrom approximate to accuracy, except by considering such circumstances separately, and as a whole, giving to each its due weight, and then, from a consideration of the whole, drawing the conclusion. Any other rule destroys its value as evidence.''

In *State* v. *Gleim*, 17 Mont. 17, 52 Am. St. Rep. 655, 31 L. R. A. 294, 41 Pac. 998, this court said, in considering an instruction on circumstantial evidence: ''We believe it to be correct that the prosecution need not prove beyond a reasonable doubt every circumstance offered in evidence which tends to establish the ultimate circumstances or facts on which it relies for a conviction''—although the court held that each *ultimate* fact or circumstance must be proved beyond a reasonable doubt.

Counsel do not attempt to point out any evidence of a nature to warrant the giving of the instruction as offered, and, even though the record should disclose some contradictory testimony, such an instruction is not justified.

That the rule above quoted is the rule in this state is emphasized by the statement of this court in *State* v. *Woods*, 54 Mont. 193, 169 Pac. 39, that ''There is much conflict, however, upon the question whether they [certain calves] were furtively taken from their mothers while they were on the range in Fallon county and driven to the place where they were found. On these points the evidence is entirely circumstantial. It will serve no useful purpose to set forth and subject to critical analysis even those portions of it which point most directly to defendants' guilt. It is sufficient to say that the conflicts in it were resolved by the jury in favor of the truth of the state's witnesses; and that, accepting these statements as true, we think the evidence as a whole sufficient to meet the requirements of the rule that, where a conviction is sought upon circumstantial evidence, the criminatory circumstances proved must be consistent with each other and point so clearly to the

guilt of the accused as to be inconsistent with any other rational hypothesis.''

Counsel contend, however, that it was the duty of the court [6] to properly instruct as to circumstantial evidence, even in the absence of any request for an instruction, and cite authorities in support of this contention. Whatever the rule may be in other jurisdictions, under section 9271, Revised Codes, it would seem that no advantage could be taken of the error, if error was committed, where no proper instruction was offered. (State v. Stone, 40 Mont. 88, 105 Pac. 89; State v. Brodock, 53 Mont. 463, 164 Pac. 658.) However that may be, it is error [7] to fail to so instruct the jury only in cases depending entirely upon circumstantial evidence.

In an elaborate note on the subject of circumstantial evidence, found in 97 Am. St. Rep., at page 790, the rule' governing here is stated as follows: ''The general rule is that where the evidence is not entirely circumstantial the court need not charge thereon [citing cases]. So where the evidence of the prosecution is both direct and circumstantial, a charge requested as to the sufficiency of circumstantial evidence to authorize a conviction, ignoring direct evidence, is properly refused. * * * Any direct testimony will serve to dispense with the necessity of an instruction on circumstantial evidence [citing cases].''

Here counsel assumed, in presenting the requested instruction, that a conviction was not sought entirely on circumstantial evidence, and the court cannot now be put in error for adopting the theory upon which counsel presented the instruction.

(b) Counsel contend that evidence of a second offense was [8] permitted to go to the jury over their objection. The evidence referred to concerned the disappearance of the animal alleged to have been stolen, shortly after an indictment was returned against the defendant. The animal had theretofore been taken from the possession of one who purchased it from defendant and returned to the complaining witness. On the day following the action of the grand jury, the animal was placed, with other horses, in a pasture, from which it dis-

appeared at some time during the night.  Witnesses were permitted to testify to seeing the defendant in the vicinity shortly before the disappearance, and to following the tracks of the animal with those of a saddle-horse from the pasture to within one and one-half miles of defendant's ranch, some fourteen miles distant.  The animal was never found.  This testimony tended to show a destruction or suppression of evidence by the defendant, and was clearly admissible as a circumstance tending toward defendant's guilt.  From the record it is clear that it was introduced for no other purpose and the jury must have so understood the testimony.

(c) No instruction was offered by the defendant as to the [9] purposes for which the testimony was received, and one was hardly necessary.  By not offering an instruction on the subject, the defense may be presumed to have been satisfied that none was necessary, and it would seem that the assignment of error came as an afterthought.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLOWAY, HURLY and COOPER concur.

