STATE, RESPONDENT, *v.* BRATTON ET AL., APPELLANTS.

(No. 4,055.)

(Submitted November 15, 1919. Decided December 8, 1919.)

[186 Pac. 327.]

*Criminal Law—Obtaining Property by False Pretenses—Promissory Notes—Evidence—Insufficiency—Practice and Procedure—Bills of Exception—Settlement—Notice—Waiver.*

Criminal Law—Practice and Procedure—Bill of Exceptions—Settlement—Notice—Waiver.
1. By his voluntary appearance at the settlement of the bill of exceptions in a criminal case, the county attorney waived the two days' notice required by section 9340, Revised Codes, to be given him of the time when the bill would be presented to the court for settlement.

Same—Obtaining Property by False Pretenses—"Property"—Promissory Notes Before Delivery.
2. *Quaere:* Is a promissory note, while still in the hands of the maker, "property" within the meaning of Section 8683, Revised Codes, so as to make the obtaining thereof, from the maker, by fraudulent pretenses a crime under that statute?

[As to term "property" in false pretense statute as including bills and notes, see notes in 9 Ann. Cas. 970; Ann. Cas. 1917D, 627.]

Same—Obtaining Property by False Pretenses—Pleading and Proof.
3. To convict of the crime of obtaining property by false pretenses, the prosecution must allege and prove the making by the accused to the person defrauded of one or more representations of past events or existing facts; that such person believed the representations to be true and, relying thereon, parted with money or property which was received by the accused; that the representations were false and were made knowingly and designedly with intent to defraud such person.

Same—Obtaining Property by False Pretenses—Evidence—Insufficiency.
4. *Held,* that the evidence was insufficient to justify conviction of defendants of the crime of obtaining property, to-wit, promissory notes, from their maker under false pretenses.

Same—Obtaining Property by False Pretenses—Other Like Acts—Evidence—Inadmissibility.
5. Where there was a total lack of proof of the commission of the crime of obtaining money by false pretenses as charged in the information, admission of testimony, for the purpose of proving intent, showing that defendants had made representations similar to those alleged to persons other than the complaining witness, was prejudicial as likely to lead to conviction on suspicion that the representations charged must have been the same as those made to others.

*Appeals from District Court of Sanders County; R. Lee McCulloch, Judge.*

J. D. BRATTON and J. G. Montgomery, convicted of the crime of obtaining property by false pretenses, appeal from the judgment of conviction and from an order overruling their motion for a new trial. Reversed and remanded.

Cause submitted on briefs of Counsel.

*Mr. Harry H. Parsons,* for Appellants.

*Mr. S. C. Ford,* Attorney General, and *Mr. Frank Woody,* Assistant Attorney General, for Respondent.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The appellants, J. D. Bratton and J. G. Montgomery, were jointly charged with the crime of obtaining property, to-wit, two certain promissory notes for $250 each, made by one E. H. Davidson, payable to himself and indorsed in blank, by false and fraudulent representations. The information contains twenty alleged false representations, which, it is alleged, were made "for the purpose of defrauding the said E. H. Davidson and obtaining from him money and property belonging to him * * * ," and by means of which representations the appellants did induce the said E. H. Davidson to execute and deliver to them the notes in question as first payment on one hundred shares of stock in the Reservation Farmers' Grain Company. Appellants were convicted and appeal from the judgment of conviction and from an order overruling their motion for a new trial.

The respondent objects to the consideration of the bill of [1] exceptions on the ground that it does not affirmatively appear from the record that the county attorney was given two days' notice, required by section 9340 of the Revised Codes, of the time when the bill of exceptions would be presented to the court for settlement, or that the county attorney was present when the bill of exceptions was settled, citing *State* v. *Gawith,* 19 Mont. 48, 47 Pac. 207; *State* v. *Moffatt,* 20 Mont. 371, 51

Pac. 823; *State* v. *Stickney,* 29 Mont. 523, 75 Pac. 201; *State* v. *Kremer,* 34 Mont. 6, 85 Pac. 736; *State* v. *Morrison,* 34 Mont. 75, 85 Pac. 738; *State* v. *Lee,* 34 Mont. 584, 87 Pac. 977.

While it is true that the provisions of section 9340 are mandatory and, in the absence of any record of compliance therewith, the bill of exceptions must be disregarded, respondent has, seemingly, overlooked the certificate of the trial judge attached to the bill of exceptions, reciting that the county attorney was personally present at the settlement thereof. By the appearance of the county attorney at the time and place of settlement, whether pursuant to notice or voluntarily, the court was vested with jurisdiction to proceed. If such attendance was voluntary, the county attorney thereby waived the notice required by the statute. Other technical objections to the consideration of the bill of exceptions were interposed, but they are not considered of sufficient moment to require attention here.

At the outset, it is seriously questioned as to whether the [2] information on which the appellants were tried, states the commission of a public offense. Our statute, section 8683, Revised Codes, declares that "every person who knowingly and designedly, by false or fraudulent representations or pretenses, defrauds any other person of money or property    *    *    *    " is guilty of the crime here charged. But as to whether a note executed by the person alleged to have been defrauded and having no value until delivered, is "property" while still in the hands of the maker, is questioned. The statute in some jurisdictions on this subject goes further than does ours, by adding to the phrase "money or property," "or valuable security." It has been suggested that even such a statute contemplates a subsisting security, and not the mere obtaining of a signature to an instrument. (11 R. C. L., sec. 20, p. 840.) Certain other jurisdictions have supplemented statutes such as ours by declaring the fraudulent obtaining of a signature to an instrument, a crime. However, this question is not raised in appellants' brief and, as the cause will be readily disposed of on other grounds, it will not be here considered further.

Seventy alleged errors are assigned. These question the sufficiency of the evidence to warrant a conviction, and present various questions of practice. While many of the specifications of error have merit, the view taken of the evidence renders it unnecessary to consider any aside from those touching on its sufficiency.

In order to convict of the crime here charged, it is necessary **[3]** that the prosecution allege and prove: (1) The making by the accused to the person injured, of one or more representations of past events or existing facts; (2) that such injured party believed such representations to be true and, relying thereon, parted with money or property, which was received by the accused; (3) that such representations were false; and (4) were made knowingly and designedly, with the intent to defraud such other person.

The judgment in this case, if affirmed at all, must be affirmed **[4]** upon the testimony of the witness E. H. Davidson, it appearing from the transcript that no one aside from appellants and Davidson was present at the time of the transaction between them. A careful study of the transcript discloses that, at no time during the examination of Davidson, did the state affirmatively show the making, by the appellants or either of them, of any one of the alleged false representations. The representations on which the state seems to have relied and to which the testimony is chiefly directed are: (1) That the Reservation Farmers' Grain Company had lately *paid*, to its stockholders, a thirty per cent dividend, and (2) that the first payments of stock subscriptions were paid by the company into a fund for the purpose of building an elevator at Perma, Montana.

Davidson's only statement on direct examination concerning the representation of appellants as to the thirty per cent dividend was: "They said their elevator company had declared a thirty per cent dividend." On cross-examination he stated: "They told me the corporation had declared a dividend of thirty per cent; neither of these men told me right out that it had ever been paid; at the time I made my subscription I did

not stop to figure whether this thirty per cent had merely been declared or paid." The record discloses the fact that the company had *declared a thirty per cent dividend,* which action was rescinded after the transaction with Davidson.

As to the second representation quoted, the witness responded to the following leading question: "Did not Mr. Bratton, the defendant, state to you at that time that this money on the two notes, the first and second notes, were to be turned over to the company, or words to that effect?" by answering, "Words to that effect." But later, in answer to a direct interrogatory by the prosecution, referring to the same matter and to Bratton, Davidson replied: "He didn't say who got the money, the company or he." And again, in his direct examination, he declared: "Mr. Bratton did not represent, make any representations in regard to the first two payments; I drew my own conclusions that it was to be used to build an elevator." Nor is the state's case aided by any declaration or admission contained in the testimony introduced by the defense. In fact, the testimony of Davidson leads to the conclusion that the only representation made to him which operated as an inducement to his subscription for stock, and consequent making and delivery of the notes in question, was the promise of a position as stock subscription salesman for the company. This we have from the mouth of the witness himself: "I wanted to get in and sell stock, the same as they were; as a matter of fact, that was one of the inducements that got me to subscribe." And again: "I expected to be employed selling stock along with Mr. Bratton and Mr. Montgomery, that is the principal reason  *  *  *  . It would have made no difference to me what became of these two notes so long as their promise to me to give me employment had been kept." And again: "Under the proposition he made to me, regarding a job, I would have bought it just the same, aside from the dividends." The representation that witness would be given such a position is not among those alleged to be fraudulent in the information.

There seems to be abundant proof in this record of representations by appellants similar to those alleged, but made to other parties than the complaining witness. This testimony was admitted for the sole purpose of proving intent and could not be considered by the jury for any other purpose, and so the court advised them in its instruction No. 16. The testimony should not have been admitted at all. There was a total lack of proof of the charges contained in the information, to warrant a conviction, regardless of the intent of the accused. The admission of such testimony, under the circumstances, could be but confusing to the jury, and it may well be said that they then mistook the collateral matter for the main issue and convicted the appellants on the conjecture or suspicion that their representations to the complaining witness were those made in the other transactions proven.

There being a total absence of proof of the gist of the offense charged, the motion for a new trial should have been granted.

The judgment and order of the district court of Sanders county are reversed and the cause is remanded.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLOWAY, HURLY and COOPER concur.