STATE, Respondent, v. BRANTINGHAM, Appellant.

(No. 5,197.)

(Submitted January 6, 1923. Decided January 29, 1923.)

[212 Pac. 499.]

*Criminal Law—False 'Pretenses—Information — Sufficiency — Variance—Failure of Proof—Appeal from Judgment—Evidence—Extent of Review.*

Criminal Law—Appeal from Judgment—From New Trial Order—Questions Reviewable.
1. Rulings upon the admission or rejection of testimony and upon giving or refusing instructions may be reviewed either upon appeal from the judgment or on appeal from an order refusing a new trial, but any other questions arising under section 12048, Revised Codes of 1921, may be reviewed only upon appeal from an order denying a new trial.
Same—New Trial—Insufficiency of Evidence—Discretion.
2. An application for a new trial on the ground that the verdict is contrary to the evidence or on the ground of the insufficiency of

the evidence to sustain the verdict is addressed to the sound discretion of the trial court.

Same—Appeal from Judgment—Extent of Review of Evidence.

3. On appeal from a judgment of conviction only, the supreme court, in considering the ruling of the trial court refusing to instruct the jury to return a verdict of not guilty, asked for on the ground that the evidence failed to establish the offense charged, may review the evidence, properly presented in a bill of exceptions, no further than to determine whether there is any substantial evidence to sustain the verdict.

False Pretenses—Failure of Proof.

4. *Held,* under section 11987, Revised Codes of 1921, that where defendant was charged with obtaining money by a false pretense that he had credit at a certain bank and could borrow the money there, testified to by one witness only, there was a total failure of proof, in the absence of any false token or writing employed by the defendant or corroborating circumstances.

Same.

5. In the absence of evidence that the complaining witness parted with money in reliance on one of several alleged false representations, conviction was not justified on that count of the information.

Same—Falsity of Representation—What Sufficient Proof.

6. In a prosecution for obtaining money by false pretense, proof of the falsity of the representation need not be direct, proof of facts tending legitimately to show its falsity being sufficient.

Same—Evidence—Sufficiency—Burden of Proof.

7. *Held,* that evidence of the assistant secretary of a corporation that defendant, charged with having obtained money by the false pretense that he owned shares of stock in the company and desired the money to pay an assessment thereon, and evidence of the two brokers doing business in the city where the crime was committed that defendant had not purchased stock from them, was sufficient to discharge the burden of proof resting upon the state to show the falsity of the representation.

Same—Evidence of Obtaining Check Sufficient to Support Charge of Obtaining Money.

8. Where the information charges that defendant obtained money by false pretense and the evidence shows that he received a check from the complaining witness which was cashed, there was neither material variance nor failure of proof.

Same—Information—Insolvency of Defendant.

9. An information charging the obtaining of money by false pretenses need not allege that defendant was insolvent at the time he procured the money or thereafter, nor that the prosecuting witness suffered loss, in the absence of statute so providing.

Same—Information—Sufficiency.

10. An information charging that defendant made certain representations, that the prosecuting witness believed them to be true and in reliance upon them parted with money which defendant re-

4. Competency of prosecuting witness on trial for obtaining property by false pretenses to testify that he was induced to part with his property by defendant's statements, see note in 34 L. R. A. (N. S.) 642.

5. Reliance of false pretenses as an element of the offense, see note in 6 L. R. A. (N. S.) 365.

8. Obtaining loan of money as constituting crime of obtaining money by false pretenses, see note in Ann. Cas. 1916C, 1158.

[66 Mont. 1.]

ceived, that they were false and known to be so by defendant, and made knowingly and designedly with intent to defraud the witness, is sufficient.

*Appeal from District Court, Silver Bow County; J. J. Lynch, Judge.*

A. J. BRANTINGHAM was convicted of obtaining money by false pretenses, and appeals from the judgment. Affirmed.

*Messrs. O'Flynn & O'Flynn* and *Mr. N. A. Rotering,* for Appellant, submitted a brief; *Mr. Rotering* argued the cause orally.

There is no sufficient competent or any competent evidence proving any pretense that the defendant had credit at the bank of W. A. Clark & Bro., or that he could have borrowed money at that bank. The cases of *State* v. *Phillips,* 36 Mont. 112, 92 Pac. 299, *State* v. *Bratton,* 56 Mont. 563, 186 Pac. 327, and *People* v. *Mauritzen,* 24 Pac. 112, are in point.

The next alleged false pretense is that the defendant owned stock in the Anaconda Copper Mining Company. The only evidence to support this allegation is the testimony of Cole that the defendant's name does not appear on the company records and the testimony of Harrington and Shock that the defendant did not buy any such stock on a margin in the Heilbronner and Lauzier-Wolcott Company brokerage establishments in Butte. Cole, however, testified that there are persons owning Anaconda Copper Mining Company stock whose names do not appear on the records; that oftentimes such stock is transferred from one man to another without having the transaction recorded on the records or books. Such stock may be indorsed and transferred in that manner. If the stock had been purchased on a margin the purchaser's name would not appear on the books. (*State* v. *Hurley,* 58 Kan. 668, 50 Pac. 887.) There is not any testimony establishing the fact that Brantingham did not have any stock on the twenty-third day of February, 1921. Such allegation is not proven. It may be, and probably is, a fact that at that time Branting-

ham owned considerable stock which he was buying on a margin.

It is next alleged that the defendant said that upon the stock which he claimed to own there had been an assessment levied in the sum of $500. Mrs. Mitchell mentions this in stating what the defendant wanted to use the money for. She does not show that this was false or that she relied upon that statement in parting with her money. That will, therefore, not support any conviction, for she did not rely on that statement. (*State* v. *Bratton,* 56 Mont. 563, 566, 186 Pac. 327; *Smith* v. *State,* 7 Okl. Cr. 136, 122 Pac. 732; *State* v. *Keyes,* 6 L. R. A. (n. s.) 369, 93 S. W. 801.) The last case cited discusses this question at some length.

The testimony fails in one other particular to support the information. The information charges that Mrs. Mitchell delivered $500 (which, of course, means cash money) to Brantingham. The evidence shows that she delivered a check to him. This does not support the information. (*Bates* v. *State,* 124 Wis. 612, 4 Ann. Cas. 365, 103 N. W. 251; *Lory* v. *People,* 229 Ill. 268, 82 N. E. 261; *People* v. *Cronkrite,* 266 Ill. 438, 107 N. E. 703; *Hendrix* v. *State,* 17 Ala. App. 116, 82 South. 564.) But it may be claimed that the check was cashed. This is immaterial, for that is not what the information charges.

*Mr. Wellington D. Rankin,* Attorney General, and *Mr. L. A. Foot,* Assistant Attorney General, for the State, submitted a brief; *Mr. Foot* argued the cause orally.

The question of the sufficiency of the evidence is not before this court for review, since appellant neither asked for a directed verdict of acquittal nor for a new trial. The only motion submitted by him was a motion to dismiss the information and discharge the defendant, and the appeal is from the judgment. (Sec. 12126, Rev. Codes 1921; *State* v. *Asher,* 63 Mont. 302, 206 Pac. 1091; *State* v. *O'Brien,* 18 Mont. 1, 43 Pac. 1091, 44 Pac. 399.)

"The form of words in which the pretense is couched is immaterial, if they are intended to create and do create the impression that defendant is making a representation as to a present or past fact, the pretense is within the statute." (25 C. J. 610, sec. 39; *In re Aldridge,* 168 Fed. 93, 97; *Ricks* v. *State,* 8 Ga. App. 449, 69 S. E. 576, 578; *State* v. *Southall,* 77 Minn. 296, 79 N. W. 1007; *State* v. *Terrill,* 87 Kan. 745, 125 Pac. 65.)

The fact that defendant obtained this money as a loan does not make it any the less an offense under the law. "If a person obtains a loan of money by a false pretense of an existing fact, he is guilty of obtaining it by false pretense even though he intends to repay." (11 R. C. L. 837, sec. 16; 25 C. J. 658; *Commonwealth* v. *Schwartz,* 92 Ky. 510, 36 Am. St. Rep. 609, 18 S. W. 775.) And the fact that he executed and delivered to complaining witness his promissory note for the money is immaterial for any purpose, except that it corroborates her testimony that appellant got her money, and the intention with which she parted with her money was immaterial. (25 C. J. 616, sec. 51; *People* v. *Haskins,* 49 Cal. App. 640, 194 Pac. 43; *Griswold* v. *State,* 77 Fla. 505, 82 South. 44.)

The offense was none the less an offense against the law, even though the complaining witness could easily have learned of the falsity of appellant's statements before she gave him the money, if such statements, in fact, did deceive her, as the gist of the offense lies in obtaining her money by means of such false statements and not because of the reasonableness or unreasonableness thereof, and the guilt of appellant is to be weighed by the effects of the statements made by him. (*State* v. *Southall,* 77 Minn. 296, 79 N. W. 1007; *People* v. *Cummings,* 123 Cal. 269, 55 Pac. 898; *State* v. *Knowlton,* 11 Wash. 512, 39 Pac. 966; *Miller* v. *People,* 22 Colo. 530, 45 Pac. 408; *State* v. *Stewart,* 9 N. D. 409, 83 N. W. 869; *State* v. *Trisler,* 49 Ohio St. 583, 31 N. E. 881.)

Appellant next contends that proof that he received a check from the complaining witness is a fatal variance from the charge in the information that he obtained money. We think

the supreme court of California has well answered this contention in the case of *People* v. *Leavens,* 12 Cal. App. 178, 106 Pac. 1103; see, also, *State* v. *Gibson,* 132 Iowa, 53, 106 N. W. 270; *State* v. *Palmer,* 40 Kan. 474, 20 Pac. 270; *Rand* v. *Commonwealth,* 176 Ky. 343, 195 S. W. 802; *Schaumloeffel* v. *State,* 102 Md. 470, 62 Atl. 803; *People* v. *Hoffman,* 142 Mich. 531, 105 N. W. 838; *State* v. *Chick,* 282 Mo. 51, 221 S. W. 10; *People* v. *Dimick,* 107 N. Y. 13, 14 N. E. 178; *State* v. *Stewart,* 9 N. D. 409, 83 N. W. 869; *State* v. *Germain,* 54 Or. 395, 103 Pac. 521; *Hunt* v. *State,* 72 Ark. 241, 105 Am. St. Rep. 34, 2 Ann. Cas. 33, 65 L. R. A. 71, 79 S. W. 769; *King* v. *State,* 66 Tex. Cr. 397, 146 S. W. 543; *Lewis* v. *Commonwealth,* 120 Va. 875, 91 S. E. 174.

The gravamen of the offense is the obtaining of the money by false pretense and it makes no difference whether appellant was solvent or insolvent; the offense was complete when the money was obtained by such means, and the repayment or the intention or ability to repay does not deprive the act of its criminality. (11 R. C. L. 843, sec. 25; *State* v. *Switser,* 63 Vt. 604, 25 Am. St. Rep. 789, 22 Atl. 724; *Commonwealth* v. *Ferguson,* 135 Ky. 32, 21 Ann. Cas. 454, 21 L. R. A. (n. s.) 1101, 121 S. W. 957; *Rand* v. *Commonwealth,* 176 Ky. 343, 195 S. W. 802.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The defendant was charged with having obtained $500 from Mrs. Annie C. Mitchell by false representations and pretenses. Upon the trial, at the conclusion of the state's case, the defendant moved the court to dismiss the information and discharge him upon the ground, among others, that the evidence failed to establish the offense charged, or any offense. The motion was overruled, and defendant rested without offering testimony. The jury returned a verdict of guilty, and judgment was entered thereon. From that judgment the appeal is prosecuted. The evidence is presented in a bill of exceptions, made

a part of the record, which complies with the requirements of section 12045 of the Revised Codes of 1921.

The principal contentions made by counsel for defendant are [1-3] that the evidence does not sustain the verdict, and that the information fails to charge a public offense. Counsel for the state insist that the evidence is not before this court for review. Section 12107, Revised Codes of 1921, provides that a defendant may appeal (1) from a judgment of conviction, (2) from an order denying his motion for a new trial, or (3) from an order made after judgment affecting the substantial rights of the party. Upon an appeal from an order refusing a new trial this court may consider any of the matters enumerated in section 12048 as the grounds of a motion for a new trial. Section 12126 provides: "Upon an appeal taken by the defendant from a judgment, the court may review any intermediate order or ruling involving the merits, or which may have affected the judgment." This section is identical with section 1259 of the Penal Code of California, and was borrowed from the California Code, when it was introduced into the laws of this state in 1895. In *State* v. *O'Brien*, 18 Mont. 1, 43 Pac. 1091, 44 Pac. 399, this court declared that in adopting the section we likewise adopted the construction theretofore given it by the supreme court of California, in *People* v. *Keyser*, 53 Cal. 183. In the case last mentioned the California court said: "The defendant may appeal from the judgment, without having made a motion for a new trial; and on the appeal he may rely upon any of the grounds of exception mentioned in section 1170 of the Penal Code." That rule was reaffirmed in *Walker* v. *Superior Court*, 135 Cal. 369, 67 Pac. 336. Section 1170 of the Penal Code of California is identical in terms with our section 12037, so that, accepting the conclusion by the California court as correct, it follows that on appeal by the defendant from a judgment of conviction this court may review such questions arising upon the selection of a jury as are comprehended in subdivisions 1 and 2 of section 12037, and also may review any order or ruling of the trial court in admitting or rejecting testimony, or in deciding any

question of law not a matter of discretion, or in instructing the jury. Thus it will be observed that the rulings of the trial court upon the admission or rejection of testimony and upon giving or refusing instructions may be reviewed either upon appeal from the judgment or upon appeal from an order refusing a new trial, but any other questions arising under section 12048 may be reviewed only upon appeal from an order denying a new trial.

One of the grounds of motion for a new trial enumerated in section 12048 is that the verdict is contrary to the evidence, which means nothing more nor less than that the evidence is insufficient to justify the verdict. (*Flaherty* v. *Butte Electric Ry. Co.,* 42 Mont. 89, 111 Pac. 348.) When an application is made for a new trial on the ground of insufficiency of the evidence to sustain the verdict, the application is addressed to the sound legal discretion of the trial court. (*State* v. *Schoenborn,* 55 Mont. 517, 179 Pac. 294; 16 C. J. 1180.)

It follows from what has been said that the question of the sufficiency of the evidence to justify the verdict, where the evidence tends even remotely to prove the elements of the crime charged, can be reviewed only on appeal from an order refusing a new trial. (*Territory* v. *Young,* 5 Mont. 242, 5 Pac. 248.) If, however, the evidence fails to prove the crime charged in its general aspect, or fails to prove some essential element of it, there is presented the question of failure of proof as distinguished from insufficiency of the evidence, and the question of failure of proof presents a bare legal question in the disposition of which there is not involved any discretion. In *People* v. *Tapia,* 131 Cal. 647, 63 Pac. 1001, the court said: "The sufficiency of the evidence is a 'question of law' only where the question is whether there is any evidence to support the verdict, or whether the evidence is so unsubstantiated as to practically amount to no evidence." In *Withers* v. *Kemper,* 25 Mont. 432, 65 Pac. 422, this court said: "To attack a decision of the court on the ground that there was a total failure of any evidence is to raise a point of law. But, in order to bring questions of the weight of evidence before this court on

appeal there must have been a hearing on motion for a new trial, and an appeal from the order granting or refusing the same." (See, also, *Ball* v. *Gussenhoven,* 29 Mont. 321, 74 Pac. 871.)

Our conclusion is that upon appeal from the judgment alone we may consider the ruling upon defendant's motion so far only as it does not involve a matter of discretion, or, in other words, our review of the evidence may extend no further than to determine whether there is any substantial evidence to sustain the verdict.

The rule here announced has been adhered to uniformly in California, and the former decisions of this court support it in principle. (*Territory* v. *Young,* above; *State* v. *O'Brien,* above; *State* v. *Gomez,* 58 Mont. 177, 190 Pac. 982; *State* v. *Francis,* 58 Mont. 659, 194 Pac. 304; *State* v. *Asher,* 63 Mont. 302, 206 Pac. 1091.) In *State* v. *Asher,* above, the court did not assume to indicate the extent to which the review on appeal from a judgment alone might be carried, but the cases cited indicate that the review must be limited as herein indicated. In *State* v. *Francis,* above, this court said that on appeal from a judgment the defendant may bring before this court for review "errors in the decision of questions of law arising during the course of the trial, exclusive of those errors which 'are embraced within any of the provisions of the law made for granting new trials.' " This is literally correct, but, if the language be construed to imply that errors in the admission or rejection of evidence or instructing the jury may not be reviewed on appeal from the judgment, if properly presented in a bill of exceptions, it narrows the rule beyond the point authorized by the statutes above. Speaking strictly, the motion made by defendant is not recognized by our practice, but we have treated it as in effect a motion to instruct the jury to return a verdict of not guilty.

The information charges that the defendant procured the money from Mrs. Mitchell by means of these false and fraudulent representations and pretenses: (1) That his credit was good at the banking house of W. A. Clark & Bro. in Butte;

(2) that he was then and there able to borrow $500 or more on his own name and credit; (3) That he owned stock in the Anaconda Copper Mining Company; (4) that an assessment had been made upon his stock and that he needed the money to pay such assessment.

The testimony of Mrs. Mitchell is to this effect: On February 23, 1921, defendant, knowing that she had a considerable sum of money, applied to her to borrow $500 for six months, with interest at the rate of ten per cent per annum. She testified: "He said he needed the money, and could have got the money at the bank that same morning, but that he thought he would give me the advantage and do me a kindness by letting me loan the money to him. * * * When he told me he could borrow the money at the bank, he didn't say how he could do it. He simply told me that his credit was good at the bank, and he could borrow the money there, but wanted to give me the preference." Again she testified that defendant told her that he had stock in the Anaconda Copper Mining Company, and needed the money to pay an assessment on the stock. She was then asked: "Q. Why did you give Mr. Brantingham this $500?" To which she replied: "Well, because I thought it was perfectly safe because he had this stock, and that if his credit was good at the bank that my money was just as good with him as leaving it in the bank. I believed he had the stock, and believed his credit was good at the bank. Didn't know anything at all to the contrary." Again she testified: "It was not on any security for which I loaned him the money originally. I thought the fact that he had these stocks and different things that that was security enough at that time." She testified further that defendant executed and delivered to her his promissory note, and that she gave him her check upon the W. A. Clark & Bro. bank for $500.

Hubert Mitchell, the son of the prosecuting witness, testified: That he was present when the transaction occurred between his mother and the defendant; that defendant "came up there on February 23, and asked my mother if she had her money invested yet, and she said, 'No.' Well, he said he

[66 Mont. 1.]

would like to take $500 himself, that he had an assessment to meet on A. C. M. stock, and he would pay us the same as he had the bank, although he could get it at the Clark's bank, but thought he would be doing us a favor by getting it from us. A check was given to him at that time and place. I have reference to Plaintiff's Exhibit 'A' as the check which was given him. He gave my mother a note at that time, and that note is now marked Plaintiff's Exhibit 'B,' which you hand to me. * * * As near as I can remember he says, 'I have some A. C. M. stock to pay assessments on,' and he would like to have $500 to pay."

This is all of the evidence which tends to prove the representations made or pretenses held out as the inducement to Mrs. Mitchell to part with her money.

Assuming for the purposes of this appeal only that the statement by defendant that he could get the money at Clark's bank is a sufficient identification of the banking house of W. A. Clark & Bro., it is significant that Hubert Mitchell alone testified to that statement. The legislature of this state has seen fit to require that the pretense relied upon in a prosecution of this character must be evidenced by some note or memorandum in writing, signed by the defendant, or, if expressed orally, it must be accompanied by a false token or writing or proved by the testimony of two witnesses or the testimony of one witness corroborated by circumstantial evidence. (Sec. 11987, Rev. Codes 1921.)

It is not contended, and could not be contended, that there was any note or memorandum indicating that defendant had credit at W. A. Clark & Bro.'s bank, or that he could have borrowed the money there. Neither was there any false token or writing employed by the defendant, and there were not any circumstances tending to corroborate Hubert Mitchell's testimony. There is not even a suggestion in the testimony of Mrs. Mitchell that defendant led her to believe, or that she did believe, that he referred to the bank of W. A. Clark & Bro. as the institution at which his credit was good or from which he could have borrowed money. We have, then, the

testimony of one witness only in support of the charge that defendant pretended that his credit was good at the bank of W. A. Clark & Bro., and that he could have borrowed the $500 from that institution. The charge was not proved because the statute declares that the testimony of one witness alone will not prove it. In other words, so far as this allegation of the information is concerned, we are presented with a case of a total failure of proof as that phrase is understood generally. (Sec. 9185, Rev. Codes 1921; *Forsell* v. *Pittsburgh & Mont. Copper Co.*, 38 Mont. 403, 100 Pac. 218; *Logan* v. *Billings & Northern R. Co.*, 40 Mont. 467, 107 Pac. 415.)

The defendant could not be convicted upon the charge that [5] he represented that he needed the money to pay the assessment upon Anaconda Copper Mining Company stock, since there is not any evidence that Mrs. Mitchell parted with her money in reliance upon that representation. (*State* v. *Bratton*, 56 Mont. 563, 186 Pac. 327.) On the contrary, the evidence discloses that she was induced to loan the money to defendant solely upon the representation that his credit was good, and that he owned Anaconda Copper Mining Company stock.

By this process of elimination we have left for consideration [6, 7] the charge that defendant pretended that he owned Anaconda Copper Mining Company stock, and the evidence that such representation was made meets the requirements of section 11987 above. But in addition to proving that the representation was made and relied upon, it was incumbent upon the state to prove that it was false (*State* v. *Taylor*, 51 Mont. 387, 153 Pac. 275), and we may examine the bill of exceptions for the purpose of ascertaining whether there is any substantial evidence tending to prove that such representation was not true. Ralph D. Cole, assistant secretary of the Anaconda Copper Mining Company, testified that he had examined the stock books of the company, and that for more than a year prior to May 31, 1921, defendant was not a stockholder of record. A representative from each of the two brokerage houses in Butte testified that defendant had not purchased Anaconda

Copper Mining Company stock on margin through the institution represented by him.

In order to prove to a mathematical certainty that defendant did not own Anaconda Copper Mining Company stock, it would have been necessary for the prosecution to trace the title of every share of that stock to its owner on February 23, 1921, and, since there were more than 35,000 stockholders, it would have been impossible, as a practical proposition, to discharge that burden, but the law does not require the impossible.

While we are not to pass upon the sufficiency of this evidence, it is well to recall that proof of the falsity of the representation need not be direct. It is sufficient if it established such facts as tend legitimately to show its falsity. (25 C. J. 652.) In *People* v. *Bowman*, 24 Cal. App. 781, 142 Pac. 495, the facts were that defendant was convicted of obtaining the signature of one N. Giacomini to a negotiable promissory note by falsely representing he (defendant) had in the Crescent City Bank bonds of a Chicago bank of the value of $3,800. Concerning the evidence introduced by the state to prove that this representation was false, the court said: "Nor does it seem to us that there was a failure to establish the falsity of the representations on which Giacomini acted. It is true there is no direct evidence that defendant did not own and have in the bank at Crescent City the bonds he claimed to have there. It was shown that the cashier of the bank had no knowledge of his having any bonds there. He had a deposit box in which he kept his corporation shares, but it contained no bonds. He represented that the cashier had refused to cash them from which it must be inferred that, if true, the cashier had some knowledge of them. But he testified that he had none. There was left then, no source of proof to the prosecution but to examine the officers of every bank in Chicago. In establishing a negative, do the rules of law require more than was here shown? We think not. It is not always possible—indeed, it is generally impossible—to prove an absolute negative, and such proof as is available is generally

circumstantial and inferential. Defendant did not testify, nor did he offer any evidence tending to show, that he ever owned the bonds or any bonds such as represented by him. Upon this point, see Wharton's Criminal Evidence, 10th ed., vol. 1, pp. 693, 694; Whartons Criminal Law, 11th ed., vol. 2, pp. 1615, 1631. We have no hesitancy in holding that the proofs submitted by the prosecution were sufficient to support the inference that defendant had no such bonds.''

In *People* v. *Perry*, 197 Mich. 47, 163 N. W. 478, the facts involved were that defendant had sold to one Reek 800 fence posts, to be shipped over the Grand Trunk Railway to Imlay City and there delivered to the purchaser. On January 14, 1916, defendant represented to Reek that he had loaded and shipped the posts, and, relying upon this representation, Reek advanced to the defendant $60. Defendant was charged with obtaining the money by false pretense. Upon the trial the only evidence offered by the prosecution to prove that the representation was false was that up to the time of the trial, eight months after the money was obtained, Reek had not received the posts. Defendant moved the court to direct a verdict of acquittal on the ground that the prosecution had failed to prove that the representation relied upon was false. The trial court overruled the motion, and on appeal the supreme court said: ''In so holding we are of opinion that the trial court was not in error. It is to be noted that the contract of sale does not mention from what station said posts were to be shipped. Under these circumstances it is apparent that it was practically impossible for the people to offer proof covering every station on the Grand Trunk Railway to the effect that the posts had not been shipped. On the contrary, if the representation made by the defendant was true, the railroad records at the station from which the shipment was made were available to him, and would have been a complete answer to the charge. It has been held that proof of the falsity of the representation need not necessarily be direct; it is sufficient if the evidence establish facts tending legitimately to show its falsity. It is said that as defendant is usually in a position to know the

truth or falsity of the representation, slight evidence of its falsity is sufficient for his conviction, in the absence of counter-vailing evidence of its truth. (See cases cited in note 15, 19 Cyc., p. 445.)''

We are satisfied that these courts reached the right conclusion, and it follows that, if the evidence in those cases was sufficient to sustain a conviction, it cannot be contended that there is not any evidence in this case tending to prove that defendant made a false representation when he said that he owned Anaconda Copper Mining Company stock.

It is next contended that the evidence that defendant re-[8] ceived a check for $500 from Mrs. Mitchell does not sustain the charge that he received $500 in money. The record discloses that the check was drawn on the bank of W. A. Clark & Bro., in favor of A. J. Brantingham or order; that it bore the indorsement, ''A. J. Brantingham'' and none other; and that it was paid by the bank on the same day that it was drawn. It is true that the signature on the back of the check was not identified as the signature of the defendant, but it does appear further that more than six months thereafter, and after his note had become due, defendant applied to Mrs. Mitchell to renew it. These facts could not leave any doubt that defendant actually received the money on the check.

There is some conflict of authority upon the proposition that the allegation that defendant received money is not supported by testimony that he received a check which he afterwards cashed, but the great weight of authority and the better reasoned cases hold that in such a case there is not any material variance, much less a failure of proof. (*People* v. *Leavens*, 12 Cal. App. 178, 106 Pac. 1103; *State* v. *Palmer*, 40 Kan. 474, 20 Pac. 270; *People* v. *Dimick*, 107 N. Y. 13, 14 N. E. 178; *State* v. *Germain*, 54 Or. 395, 103 Pac. 521; 25 C. J. 641, and cases cited.)

Finally, it is contended that the information is insufficient, [9] in that it fails to charge that defendant was insolvent at the time he procured the money or thereafter, and in support of this contention counsel for defendant cite *People* v. *Holtz-*

*man,* 272 Ill. 447, 112 N. E. 370, but the decision in that case is predicated upon a special statute which makes the insolvency of the defendant an important element of the crime. (2 Jones & Addington's Illinois Ann. Stats., sec. 3654.) The general rule is that an information for obtaining money by false pretenses need not allege specifically that the prosecuting witness suffered loss unless the statute makes actual loss an element of the offense. It is sufficient if it discloses that the prosecuting witness suffered "legal injury," as that term is understood in the law. (*Stoltz* v. *People,* 59 Colo. 342, 148 Pac. 865; *West* v. *State,* 63 Neb. 257, 88 N. W. 503; 25 C. J. 635; 19 Cyc. 435; 11 R. C. L. 843.)

The gravamen of the offense is making a false representa-[10] tion and thereby obtaining the money. (*Commonwealth* v. *Ferguson,* 135 Ky. 32, 21 Ann. Cas. 454, 24 L. R. A. (n. s.) 1101, 121 S. W. 967.) The information here is sufficient. It charges that defendant made the representations mentioned above; that Mrs. Mitchell believed them to be true, and in reliance upon them parted with her money, which the defendant received; that the representations were false, and known to be false by the defendant when he made them, and that they were made knowingly and designedly with intent to defraud Mrs. Mitchell. (*State* v. *Bratton,* above.)

The other errors assigned do not merit special consideration. The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, GALEN and STARK concur.