The STATE OF MONTANA, Plaintiff and Respondent, *v.* GLENN LAGERQUIST, Defendant and Appellant.

No. 11487.
Submitted September 12, 1968. Decided October 17, 1968.
445 P.2d 910.

Thomas E. Towe (argued), Billings, for appellant.

John L. Adams, Jr., County Atty. (argued), Billings, Forrest H. Anderson, Atty. Gen., Stacy W. Swor, Asst. Atty. Gen., Helena, for respondent.

MR. JUSTICE JOHN CONWAY HARRISON delivered the Opinion of the Court.

This appeal is from a judgment of conviction after a jury trial on seven counts of obtaining money by false pretenses. The appeal is from the conviction and sentence of three years on each count, with the sentences running concurrently.

In September 1966, a Mr. Neal Johnson of Chinook, Montana received a call from the appellant who inquired about the purchase of Johnson's hay. The original agreement involved a stack of hay in excess of 100 tons at an agreed price of $24 per ton to be weighed at the Harlem Seed Company's scales. Neal Johnson was to be paid for each load after the hay had been weighed and a weight slip had been issued

24

by the Harlem Seed Company. All but one of the seven loads were weighed according to the scale book at the Harlem Seed Company there being no duplicate slip for the fifth load. Johnson received two "insufficient fund" checks for his 110 tons of hay and was unable to protect himself due to the fact that by the time the checks bounced the appellant had disposed of all the hay.

The scale of the Harlem Seed Company was located several miles from the Neal Johnson ranch on the road the appellant traveled to where he ultimately sold the hay. Appellant arranged with the Seed Company to do the weighing but the testimony revealed that appellant did some of the weighing himself after closing hours of the Seed Company's office. Arrangements were made for truckers who used the scale after hours to get a key from a nearby service station and make out weight tickets. There was evidence that Mr. Ude of the Seed Company weighed three loads for appellant and four other tickets were made out by someone else—presumably by either appellant or his driver.

During the trial one of appellant's employees who accompanied him either on three or five trips testified concerning the hay's weight: "Oh, he just told me that the hay was going to be quite a bit heavier by the time we got to Worden, than when we left Harlem * * *."

Mr. Dan Vogel of Worden, the purchaser of the hay, testified that he purchased eight loads of hay from the appellant; that at the time of delivery he was given the load weight slips by the appellant; that on the basis of the slip weight he paid the appellant by check for each load, noting on the checks the weight; that he paid $30 per ton relying on appellant's representation that the weight slips were true and accurate; that at the time of the delivery of the eighth load he, Vogel, learned from the sheriff's office that appellant had given a bad check to a farmer in the Billings area for a load of hay delivered to the Vogel ranch. Vogel further testified

that about that time he became suspicious of the weights of the loads he had received; that he confronted appellant in the presence of Mrs. Vogel, a deputy sheriff and a Mr. Jensen about the false weights and appellant admitted that all of Vogel's weights were fictitious; that concerning the Jensen hay appellant had delivered to Vogel, the true weight was 9.45 tons and the weight charged Vogel was 13.73 tons; that this Jensen hay was on a Harlem weight ticket though Harlem is over 200 miles north of that area. Last, but not least, Vogel testified that after admitting the shortages appellant told Vogel he would make it all up to him but he never did.

The appellant set forth ten issues alleging error.

1. Did the lower court err in denying defendant's motion to dismiss for failure to bring the case to trial within six months?

2. Did the lower court err in overruling defendant's demurrer to the information?

3. Did the lower court err in overruling defendant's de-motion to strike State's reply brief?

4. Did the lower court err in denying defendant's motion to dismiss for lack of jurisdiction?

5. Did the lower court err in admitting into evidence State's exhibits one through five and that portion of exhibit six which purports to show weight tickets representing Neal Johnson's hay?

6. Is the evidence insufficient to sustain the conviction?

7. Did the lower court err by instructing the jury that the property obtained did not have to be delivered to the defendant to be guilty of the offense as charged?

8. Did the lower court err in failing to instruct on the following lesser included offenses: (1) using false weights or measures; (2) giving full weight in sales of hay; (3) obtaining money by false pretenses for less than $50 as a misdemeanor; and (4) selling less than the quantity represented of any commodity?

9. Did the lower court err in refusing defendant's offered instruction No. 3?

10. Did the lower court err in denying the defendant's motion to exclude any reference to the prior conviction?

Issues one concerns the appellant's right to a speedy trial. Section 94-9501, R.C.M.1947, provides:

"The court, unless good cause to the contrary is shown, must order the prosecution to be dismissed in the following cases: * * *

"2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial within six months after the finding of the indictment, or filing of the information."

In this case some 18 months separated the original information and the trial, however, the original information of October 4, 1966, was dismissed and the new information was filed April 7, 1967. This new information is the one appellant went to trial on, January 15, 1968, some 283 days after the filing of the information. During this period the trial court was called upon to rule on some fifteen motions, including an 88 day period attributable to the appellant. In addition, the case was set for trial in October 1967, appellant sought supervisory control on an original procedure filed in this Court causing the case to be removed from the trial calendar.

It is the appellant's position that State ex rel. Sullivan v. District Court, 150 Mont. 203, 433 P.2d 146, is controlling and that the trial court erred in failing to dismiss the action for failure to bring the appellant to trial within six months. After carefully reviewing the record we must disagree with appellant's contention that this is a case for the application of the rule set forth in State ex rel. Sullivan v. District Court, supra; rather it comes under our holding in State ex rel. Thomas v. District Court of Thirteenth Jud. Dist., 151 Mont. 1, 438 P.2d 554.

In that case this Court ruled, in speaking of our constitutional and statutory provisions for speedy trial, "Although compliance with such statutory provision does not per se constitute compliance with constitutional requirements (State v. McGowan, supra), statutory compliance may properly be considered as a circumstance in determining whether the constitutional right of a speedy trial has been violated. In doing so, we note that six months has not elapsed in the case of either defendant, exclusive of the delays caused or contributed to by their own actions." Such are the facts in this case where appellant's application to this Court in October 1967 removed the case from trial within the six months period.

Speaking further from our opinion in State ex rel. Thomas v. District Court of Thirteenth Jud. Dist., supra, we said:

"Neither Federal nor State Constitutional guarantees of a speedy trial are violated where either good cause has been shown for the delay in trial or where the defendant waives or consents to the delay, either expressly or impliedly. * * *

"Federal criteria applied to determine whether a defendant in a criminal proceeding has been denied a speedy trial within the ambit of United States Constitutional guarantees are these: (1) length of delay, (2) reason for delay, (3) waiver of right to a speedy trial by defendant, and (4) prejudice to the defendant from the delay."

Applying these criteria to this case we find no denial of a speedy trial. The question of whether there is undue delay is for the trial court to decide and it decided this question within the principles enunciated by this Court in State v. McGowan, 113 Mont. 591, 131 P.2d 262, where we said: "Whether a trial is a speedy trial within the Constitution is a judicial question."

Appellant argues that it was the court's duty to set the trial during the month of December 1967, after this Court had denied his petition for supervisory control and returned the matter to the trial court. With this argument we find no

merit. By bringing the special proceeding to this Court appellant disrupted the normal trial procedure. When returned to the trial court the matter must of necessity await the trial judge's reasonably prompt calendar considerations in getting it to trial, for a "speedy trial" required by our Constitution does not mean trial immediately after the return of the case from an appellate decision disregarding the other business pending before the court.

■ ■ The appellant's second issue alleges the court erred in not granting his demurrer to the information on the basis that it failed to state a public offense. The elements of the offense of obtaining money by false pretenses were established by this Court in State v. Bratton et al., 56 Mont. 563, 186 P. 327, and they are:

1. The making by the accused to the person injured one or more representations of past events or existing facts.

2. The second element of the crime is reliance.

3. The third element of the crime is that the representations are false.

4. The final element of the crime is the intention by the appellant to knowingly defraud another person.

The record is silent on the court's reasoning in overruling the demurrer. Our statute concerning the court's ruling on the demurrer is section 94-6706, R.C.M. 1947:

*"Judgment on demurrer.* Upon considering the demurrer, the court must give judgment, either allowing or disallowing it, and an order to that effect must be entered upon the minutes." We find no error in the trial court's ruling.

■ ■ The appellant's third issue concerns the trial court's failure to strike the State's reply brief to appellant's brief on demurrer. With this issue we find no merit. Every presumption that the trial court acts properly is accorded the ruling of that court. This is a matter of discretion for the trial court and we find no abuse on the part of the trial judge.

The next issue is directed to the jurisdiction of the court.

Appellant alleges that the acts alleged in the seven counts were misdemeanors, as set forth in our statutes sections 90-620 and 94-1904, R.C.M.1947, and not felonies as provided in section 94-1805, R.C.M.1947.

Section 90-620, R.C.M.1947, provides *"Offenses and penalties.* Any person who by himself or by his servant or agent, or as the servant or agent of another person, performs any one of the acts enumerated in subsections one (1) through five (5) of this section shall be guilty of a misdemeanor and, upon a first conviction thereof, shall be punished by a fine of not less than twenty dollars ($20) or more than two hundred dollars ($200) ; and upon a second or subsequent conviction thereof, he shall be punished by a fine of not less than fifty dollars ($50) or more than five hundred dollars ($500).

(1) Sell, or offer or expose for sale, less than the quantity he represents of any commodity, thing, or service.

(2) Take more than the quantity he represents of any commodity, thing, or service, when, as buyer, he furnishes the weight or measure by means of which the amount of the commodity, thing, or service is determined.

(3) Keep for the purpose of sale, advertise, or offer or expose for sale, or sell, any commodity, thing, or service in a condition or manner contrary to law or regulation.

(4) Violate any provision of this act or of the regulations promulgated under the provisions of this act for which a specific penalty has not been prescribed.

(5) Refuse to exhibit any article, commodity or the container of any commodity, or anything being sold or offered for sale at a given weight or quantity, or ordinarily so sold, to the state sealer or his deputy sealers, for the purpose of allowing the same to be tested and proved as to the quantity contained therein as in this act provided; or for the purpose of allowing the same to be inspected to ensure that all other requirements of this act have been complied with."

Section 94-1904, R.C.M.1947, provides: *"Weight by the ton*

*or pound...* In all sales of coal, hay and other commodities, usually sold by the ton or fractional part thereof, the seller must give to the purchaser full weight, at the rate of two thousand pounds to the ton; and in all sales of articles which are sold in commerce by avoirdupois weight, the seller must give to the purchaser full weight, at the rate of sixteen ounces to the pound; and any person violating this section is guilty of a misdemeanor."

Section 94-1805, R.C.M.1947, provides: *"Obtaining money or property by false pretenses.* Every person who knowingly and designedly, by false or fraudulent representation or pretenses, defrauds any other person of money or property, including evidence of indebtedness, or who causes or procures others to report falsely of his wealth or mercantile character, and by thus imposing upon any person obtains credit, and thereby fraudulently gets into possession of money or property, is punishable in the same manner and to the same extent as for larceny of the money or property so obtained."

The appellant argues that because his acts violated more than one criminal statute the more specific statute controls. This argument is premised upon the contention that the misdemeanor and felony statutes are in conflict. We find this contention erroneous in view of previous rulings. The statutes set forth separate and distinct crimes. This Court in State v. Marchindo, 65 Mont. 431, 446, 211 P. 1093, quoted from a Massachusetts case holding: "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.' "

Here the charge under section 94-1805, R.C.M.1947, required numerous facts not required under either of the misdemeanor statutes necessitating different proof. The fact that the legislature provides a course of action by more than one statute allows the state to choose either applicable law,

and where different proof is required for each offense, a single act or transaction may violate more than one criminal statute. This problem was answered by the Supreme Court of New Jersey in State v. Fary, 16 N.J. 317, 108 A.2d 593. There, in a similar fact situation, the court said: "By leaving both statutes on the books * * * the Legislature clearly intended that the two offenses should remain, one as an indictable crime and the other as a disorderly persons offense. * * *. The fact that there is an area in which two statutes overlap and prohibit the same act, as in this case, does not mean that the defendant can only be prosecuted under the statute providing for the lesser penalty."

It is a cardinal principle of construction that repeals by implication are not favored. When there are two acts upon the same subject, the rule is to give effect to both if possible. The intention of the legislature to repeal must be clear and manifest. Reading the statutes in question here we find no such intention on the part of the legislature.

The next issue is directed to the admission into evidence of six weight slips on the Neal Johnson hay. Appellant alleges that they do not logically tend to establish any fact in issue. We find no merit to appellant's position for the exhibits are proper i. e., to show the real weight at the time of purchase as compared to the weights given to Dan Vogel and represented by appellant as the true weight. The exhibits were also important in establishing the amounts of money obtained fraudulently from Vogel and to establish that the amount exceeded fifty dollars, thereby becoming a felony.

Appellant next raises the issue that the State failed to show by competent and relevant evidence the true weight of the loads of hay sold to Vogel. We have carefully reviewed the evidence and find that at $30 per ton the false weight slips given Vogel show that he paid over $50 more than he should have for each load. Once the $50 figure is established a felony exists and it becomes immaterial what the figure is.

The next issue alleges that because the appellant did not receive a check made out to him personally an element of the crime has not been established under the doctrine established by State v. Bratton, supra.

During the trial of the case it was established that Vogel was directed by the appellant to make each check payable to his wife, Frances Lagerquist. It was also established that the family was living together and the money was used by Mrs. Lagerquist for the household support of the family—including the appellant. Too, there is evidence that she, Mrs. Lagerquist, acted in a secretarial capacity for appellant's business operations. With these facts well established at the trial the appellant now asks this Court to narrowly construe our holding in State v. Bratton, supra, where the Court found one of the elements to be:

"That such injured party believed such representations to be true and, relying thereon, parted with money or property, *which was received by the accused.*" (Emphasis ours.)

This argument taxes our credulity. We concur with the general rule concerning payment as stated in 35 C.J.S. False Pretenses § 25: "Further, the property need not be obtained by accused for himself, it being sufficient if, as a result of his false representations, it is delivered either for the benefit of accused or for another's benefit." See also 32 Am.Jur.2d False Pretenses, § 32.

The next issue raised by the appellant is the court's failure to instruct the jury concerning two misdemeanor offenses which were lesser included offenses.

As previously noted in this opinion the felony statute is a separate and distinct crime from the two misdemeanor statutes relied upon by appellant. The misdemeanor statutes require a "sale" while the felony statute of obtaining money under false pretenses does not require the crime to arise out of a "sale." In order for an offense to be a lesser included offense, and be included within another offense

which is greater, it is necessary that the greater offense include every element of the lesser offense plus other elements. People v. Higgins, 86 Ill.App.2d 202, 229 N.E.2d 161.

The next issue concerns the court's refusal to give appellant's proposed instruction No. 3. Appellant's instruction, tailored to his fact situation, would have instructed the jury that the appellant must receive the money. We have previously discussed the law on this question and find the appellant's contention without merit.

Last is the question of whether the State erred in charging the appellant with the commission of a prior felony conviction. Under the law of this state at the time of trial, such a conviction could have been charged. Section 94-4713, R.C.M.1947; State v. Livermore, 59 Mont. 362, 196 P. 977; State v. O'Neill, 76 Mont. 526, 248 P. 215.

The judgment is affirmed.

Remittitur forthwith.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES HASWELL, ADAIR and CASTLES, concur.