No. 12746

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

-----

BERNARD JAMES FITZPATRICK,

Petitioner,

-vs-

ROGER W. CRIST, WARDEN MONTANA STATE PRISON,

Respondent.

-----

Counsel of Record:

For Petitioner:

David J. Patterson, argued, Missoula, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena, Montana
Thomas A. Budewitz, Assistant Attorney General, argued, Helena, Montana

-----

Submitted: November 12, 1974

Decided: DEC 11 1974

Filed: DEC 11 1974

*Thomas J. Kearney*
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an original proceeding in this Court.

On April 15, 1972, petitioner Bernard Fitzpatrick and on April 17, 1972, one Gus Gardner were arrested for the murder of a fellow inmate at the Montana State Prison in Deer Lodge, Montana. During the trial on February 28, 1973, Gardner was granted a directed verdict of not guilty, but petitioner was convicted of second degree murder and sentenced to a term of twenty years, to be served consecutively with the five year term he was serving at the time of his arrest. Petitioner unsuccessfully challenged certain evidentiary matters upon appeal to this Court, which affirmed his conviction on December 4, 1973. State v. Fitzpatrick, _____Mont._____, 516 P.2d 605, 30 St.Rep. 1052.

On April 22, 1974, petitioner filed pro se a "Petition for Writ of Habeas Corpus" with this Court. Among other things, he alleged the district court prejudiced his rights by failing to make timely appointment of counsel; to arraign him in the manner required by law; or to grant him a speedy trial as demanded.

On the same day this Court issued an order referring the petition to the Montana Defender Project in order that it ascertain the validity of petitioner's allegations and take appropriate action. The Montana Defender Project is a clinical legal aid program supervised by the University of Montana Law School and staffed by senior law students. Professor David J. Patterson and student Ken Green spent several months investigating petitioner's claims and from prison records, letters, and the like, were able to construct a factual framework satisfactory to this Court for the purpose of acting upon the petition. Finally, it was agreed among all concerned that in order to expedite matters this proceeding would be considered a post-conviction hearing, (See Chapter 26, Title 95, R.C.M. 1947, Sections 95-2601-2608), rather than an application for habeas corpus under the Montana Rules of Criminal Procedure.

The briefs with attached exhibits submitted in petitioner's behalf by the Montana Defender Project bring to light these events: After his "arrest" on April 15, 1972, petitioner was taken to a segregation cell within the main walls of the prison. Three days later a complaint charging murder was issued and an initial hearing was held in the deputy warden's office. Petitioner and Gardner were informed of their rights, including the right to appointed counsel. Petitioner requested appointed counsel at that time.

On April 26, 1972, petitioner was transferred from his segregation cell to a maximum security cell (one used for disciplinary purposes) where he stayed until July 19, 1972.

On May 4, 1972, petitioner sent a letter to the Honorable Sid Stewart, then district judge of the third judicial district, requesting a court appointed attorney. While awaiting word on this request, petitioner had his wife contact the law firm of Sandall, Moses & Cavan of Billings, Montana, about the possibility of representing him and Gardner. Shortly thereafter, D. Frank Kampfe, Esq., of that firm, made an appointment to visit petitioner to discuss the case and make fee arrangements.

On May 18, 1972, William Taylor, Esq., of Deer Lodge visited petitioner at the prison. Apparently Taylor was sent by Judge Stewart in response to petitioner's letter of May 4. After discussing the case with petitioner, Taylor advised petitioner he would not represent him.

Kampfe visited petitioner and Gardner at the prison on May 30, 1972. Gardner paid Kampfe $800 as a retainer and informed him that he (Gardner) might be able to raise the money needed to represent both defendants. Petitioner claimed an inability to pay anything.

On July 5, 1972, Kampfe withdrew from the case because of a conflict of interest within his law firm. He returned $700 to Gardner, keeping the other $100 for time and expenses incurred in making the visit to the prison. Kampfe also advised the Montana Defender Project of the case and asked that defendants be contacted as soon as possible.

On July 12, 1972, the Montana Defender Project notified pe-titioner that the Defender Project did not represent anyone at the trial level. Professor Patterson, however, offered to keep petitioner advised of the proceedings against him and informed him of his right to court appointed counsel.

On July 15, 1972, three months after his arrest, petitioner was still in maximum security and without the aid of counsel. On this date, in a letter to the Montana Defender Project, peti-tioner expressed his disappointment with the Project's inability to represent him and mentioned his difficulities in getting legal assistance; his confinement in maximum security since April; and, his ignorance of the situation. He closed with a plea to have "someone from the Defender's Project come down and talk to us and let us know just what is going on."

On July 25, 1972, petitioner sent these papers to the district court:

1. A motion to file and proceed in forma pauperis;

2. A motion for appointment of counsel;

3. A demand for speedy trial; and

4. A motion to dismiss.

All of these papers were received and filed in the district court on July 27, 1972.

On August 22, 1972, over four months (126 days) after the initial appearance, petitioner's preliminary hearing began. Peti-tioner testified he was indigent and requested appointed counsel. The hearing therefore was continued for a week to allow appointment of counsel. The state, however, did take depositions of four major witnesses then present.

On August 24, 1972, Judge Stewart appointed James J. Masar, Esq., of Deer Lodge to represent petitioner. From the initial hearing, where petitioner first requested appointment of counsel, to the actual appointment there was a delay of over four months (128 days).

On August 28, 1972, the preliminary hearing was completed. The order binding petitioner and Gardner over to the district court for

trial was issued on October 4, 1972, and the Information against them was filed on October 12, 1972.

The trial of both defendants began on February 26, 1973, and lasted two days. From the date of the demand for speedy trial to the date of the trial over seven months (216 days) had elapsed.

In light of the above facts, petitioner contends:

1. The four month delay between the initial hearing and the preliminary hearing violated section 95-902, R.C.M. 1947.

2. The four month delay in the appointment of counsel deprived petitioner of his right to effective counsel.

3. The seven month delay between the demand for speedy trial and the trial deprived petitioner of his right to a speedy trial.

At the outset it should be observed that we are proceeding on the assumption petitioner has not waived these issues, despite his failure to raise them earlier. We do not reject the general proposition that such questions should be interposed as promptly as possible, but only say that the unusual facts of this case make a clear cut determination of waiver difficult. Unless there is substantial evidence of waiver, constitutional claims must be heard on their merits.

The basic right to counsel is firmly established by the United States and Montana Constitutions and the Montana Code of Criminal Procedure. The narrow issue here in when this right attaches and whether a four month delay in the appointment of counsel, while the defendant is confined in maximum security, renders counsel ineffective. We are convinced that under both federal and Montana law petitioner's right to appointed counsel attached no later than his initial hearing; that petitioner did not waive his right to appointed counsel; and that the delay in the appointment of counsel was prejudicial to petitioner's case.

Our law provides that any arrested person must be brought without unnecessary delay before a judge for an initial appearance, and that it is the duty of that judge to advise defendant of his right to counsel, and of his right to have counsel assigned by a court of

record.  Sections 95-901 and 95-902, R.C.M. 1947.  Obviously the
court's duty cannot end with a mere reading of his rights to
defendant; if defendant requests counsel to be appointed the
court without unnecessary delay must determine indigency and
appoint counsel accordingly.  How can this duty be fulfilled by
delaying the appointment of counsel for four months while the
state prepares its case and the defendant lingers in a prison
or a jail?  The length of the delay here, coupled with petitioner's
plight during the interim, shocks one's concept of fundamental
fairness and due process.  Federal cases compel the same result.
See:  Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L ed
2d977; United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18
L ed 2d 1149.

Our holding on the issue of delay in appointing counsel for
petitioner is buttressed by a showing of actual prejudice.  One
defense petitioner raised at trial was that of alibi.  The delay
saw a release from the state prison of many potential alibi
witnesses and caused a loss of memory in those who remained.
On April 15, 1972, the date of petitioner's arrest, the section
of the prison to which petitioner was assigned contained 112
inmates.  By August 24, 1972, the date counsel was appointed, 65
of these inmates had been released.  This turnover of inmates
seriously undermined counsel's ability to conduct interviews to see
who could verify petitioner's alibi.

Another defense concerned the interchange and labeling of
prisoner clothing.  Introduced in evidence at trial were three
articles of blood stained clothing.  Only one of these articles--
a pair of prison issued levis--bore petitioner's name.  Petitioner
contends that on the day of his arrest he could account for all
the levis issued to him, but the delay in appointing counsel made
it impossible for his attorney to investigate and prove such a
contention.  Unquestionably, the deprivation of counsel for four
months rendered these defenses virtually meaningless.

We also believe the seven month delay between the demand for speedy trial and the trial itself violated petitioner's right to a speedy trial. The United Sta tes and the Montana Constitutions guarantee an accused the right to a speedy trial. The United States Supreme Court and this Court have adopted essentially the same test to determine whether a trial is "speedy". Compare Barker v. Wingo, 407 U.S. 514, 530, 532, 92 S.Ct. 2182, 33 L ed 2d 101, with State v. Lagerquist, 152 Mont. 21, 445 P.2d 910. Barker describes this test as a balancing test "in which the conduct of both the prosecution and the defendant are weighed." It identifies the factors involved as:

1. Length of delay;

2. Reason for delay;

3. Defendant's assertion of the right; and

4. Prejudice to defendant.

Applying this test to the instant case, we find:

Length of delay: Seven months. We emphasize this delay is not considered a per se violation of petitioner's right to a speedy trial, but under the circumstances here it is thought long enough to shift to the state the burden of explaining the reason for the delay and showing absence of prejudice to petitioner.

Reason for delay: The state's contention that it took much time to gather and analyze the evidence used against petitioner at his trial is unsatisfactory because the record here explains this caused no more than two and one-half months of the delay. Moreover, the evidence gathering process started before petitioner demanded a speedy trial. It is not seriously contended that petitioner or his counsel contributed to the delay.

Defendant's assertion of the right: Petitioner's written demand for speedy trial seven months before his trial began is a matter of record.

Prejudice to defendant: Barker explained what lay at the heart of this fourth factor:

"* * * Prejudice, of course, should be assessed
in the light of the interests of defendants which the
speedy trial right was designed to protect.  This
Court has identified three such interests:  (i) to
prevent oppressive pretrial incarceration; (ii) to
minimize anxiety and concern of the accused; and (iii)
to limit the possibility that the defense will be
impaired.  Of these, the most serious is the last, be-
cause the inability of a defendant adequately to prepare
his  case skews the fairness of the entire system.
If witnesses die or disappear during a delay, the pre-
judice is obvious.  There is also prejudice if defense
witnesses are unable to recall accurately events of the
distant past.  Loss of memory, however, is not always
reflected in the record because what has been forgotten
can rarely be shown." (Emphasis added).

To the same effect is State v. Mielke, 148 Mont. 320, 322, 420

P.2d 155, citing United States v. Ewell, 383 U.S. 116, 86 S.Ct.

773, 15 L ed 2d 627.

We think petitioner was clearly prejudiced with respect to all

three interests discussed in Barker. First, when petitioner was

arrested he was serving a sentence at the "honor farm" of the state

prison, but thereafter he was placed in maximum security for over

three months.  Without more, the state merely asserts such con-

finement was lawful and necessary.  This is hardly sufficient to

carry the state's burden.

Second, petitioner's predicament maximized, rather than

minimized, his anxiety and concern.  This is amply demonstrated

by his letter of July 15, 1972, to the Montana Defender Project

and by his motion for speedy trial of July 27, 1972, wherein  he

alleged physical and mental anguish of such a nature as to inhibit

him from assisting in his own defense.  The state's position that

any man accused of a serious crime will suffer some anxiety and

concern and that minimization of these emotions is largely subject

to individual quirks of personality utterly fails to come to grips

with the stark realities here.

Third, what has already been said about the delay in appointment

of counsel impairing petitioner's alibi defense applies even more

strongly to the problem of speedy trial, since petitioner's trial

was delayed another six months after counsel was finally appointed.

From the foregoing, it is plain the state by its unexcused inaction deprived petitioner of effective representation by counsel and a speedy trial. Since we have decided the case on these issues, it becomes unnecessary to consider whether section 95-902, R.C.M. 1947, was violated.

The judgment of conviction of February 28, 1973, is set aside and the sentence vacated, with prejudice.

----------------------------------------
Chief Justice

We Concur:

Justices.