No. 81-336

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

MARK CREEKMORE,

Defendant and Appellant.

---

Appeal from: District Court of the Eighth Judicial District,
In and for the County of Cascade
Honorable Joel G. Roth, Judge presiding.

Counsel of Record:

For Appellant:

Howard F. Strause argued, Great Falls, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Mark Murphy argued, Assistant Attorney General, Helena,
 Montana
J. Fred Bourdeau, County Attorney, Great Falls, Montana
Thomas M. McKittrick argued, Deputy County Attorney,
 Great Falls, Montana

---

Submitted: September 24, 1981

Decided: JAN 5 1982

Filed: JAN 5 1982

Thomas J. Kearney
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Defendant Mark Creekmore was convicted in a jury trial of felony deceptive practices under section 45-6-317(1)(a), MCA, in the District Court, Eighth Judicial District, Cascade County. He was charged with making false claims to an insurance company and receiving $1,840.00 as a result of the deceptive claims.

The District Court sentenced Creekmore to a three-year sentence, deferred upon certain conditions, including restitution. He was designated a nondangerous offender.

Creekmore appeals from this judgment and sentence upon two principal grounds: (1) that he was denied a speedy trial, and (2) that evidence of whether he had taken a polygraph test was improperly admitted against him.

We affirm the judgment of conviction.

The alleged crime occurred on or about September 23, 1979. The information was filed on July 31, 1980, and defendant and his wife Diana Creekmore were arrested on July 31, 1980. They were released on their own recognizance on August 1, 1980.

On January 19, 1981, the State filed a motion to set an arraignment date. The court ordered an arraignment for January 23, 1981. Due to an overcrowded caseload and a conflict on the court calendar, the court, sua sponte, ordered the January 23 date to be vacated and reset the arraignment for January 30, 1981. On January 30, 1981, the court vacated the arraignment because the presiding judge was engaged in a trial in Choteau County. The arraignment was reset for February 4, 1981.

-2-

On February 4, 1981, the arraignment was held with both defendants pleading not guilty. The court set an omnibus hearing for February 20, 1981, and a jury trial for March 20, 1981.

On February 20, 1981, the omnibus hearing was held.

On March 3, 1981, the defendants filed their first motion to dismiss for lack of speedy trial and also a motion to continue the trial date of March 20, 1981. The court ordered a hearing on defendants' motion to dismiss on March 23, 1981, and also ordered that the March 20 jury trial be vacated, to be reset depending upon the ruling on the motion to dismiss.

On March 13, 1981, the State filed a brief in opposition to the defendants' motion to dismiss.

On March 23, the deputy county attorney handling the case was in Helena before this Court on a case where the Cascade County Attorney had been ordered to appear, and hence the hearing was vacated. The defendants and their attorney were present in the District Court at the time set for the hearing.

On May 21, 1981, the defendants filed a second motion to dismiss for lack of speedy trial. An order was entered setting that hearing for June 11, 1981.

On May 26, 1981, the State moved to set a trial date and an order setting the jury trial date was entered for June 17, 1981.

On June 3, 1981, the State moved to vacate the June 11 hearing date and reset the same for June 9. That motion was granted.

On June 9, 1981, a hearing was held on the motion for dismissal for lack of speedy trial. The deputy county

Under Barker, prejudice to defendant is to be considered as follows:

> "Prejudice, of course, should be assessed in light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during the delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown." Barker, 407 U.S. at 532.

Here, Creekmore was not subjected to oppressive pretrial incarceration because he was released on his own recognizance. The only anxiety claim is the fact that his wife, who was also a defendant at the time, lost her job, she claiming that the pending prosecutions caused her to lose the job. The District Court disagreed on this point, however, since there was conflicting evidence relating to the reasons for her discharge. The District Court relied on evidence that she was terminated because of tardiness in reporting for work rather than because of the pending charges. Moreover, the District Court saw no relationship between her firing and the pending charges or the right to a speedy trial.

Nothing in the record before the District Court at the time it refused to dismiss for want of speedy trial, nor in the record since, discloses in any way that Creekmore's ability to prepare his defense was impaired. As the United States Supreme Court said, that is the most important factor with respect to the consideration of prejudice. Barker, supra. If, in considering all the circumstances, the court

-5-

attorney who requested the June 9 hearing was not in court because he was engaged in another felony trial before another judge in Cascade County.

On June 9, 1981, the court took testimony with respect to the motion to dismiss for lack of speedy trial and heard oral arguments. He entered his memorandum decision and order on June 10, 1981, denying dismissal for lack of speedy trial.

On June 16, 1981, the charge against Diana Creekmore was severed from that of her husband, Mark Creekmore, and his trial setting was reaffirmed for June 17, 1981.

Mark Creekmore's trial before a jury came on in the regular course and he was found guilty by the jury on June 18, 1981. His sentence was thereafter imposed.

Creekmore contends that the delay of approximately 11 months between his arrest and the date of the trial triggers the tests of Barker v. Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. We agree. The delay in this case is sufficient to trigger the balancing test required in Barker. See State ex rel. Briceno v. Dist. Ct. of 13th Jud. Dist., Etc. (1977), 173 Mont. 516, 568 P.2d 162; Fitzpatrick v. Crist (1974), 165 Mont. 382, 528 P.2d 1322.

The four factors to be considered under Barker are: (1) length of delay, (2) reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the determination of any prejudice to the defendant. Barker, 407 U.S. at 530; State v. Larson (1981), _____ Mont. ___, 623 P.2d 954, 957, 38 St.Rep. 213, 215. In this case we pass over the first three factors named, because even if defendant's assertion as to those factors are all in his favor, our view of the fourth factor is dispositive in this case. In balancing the Barker factors, the lack of prejudice tips the scales against defendant.

-4-

finds with respect to the factor of prejudice, that defendant's right to a fair trial was not impaired, that part of the prejudice test, set forth in Barker, has not been met. On that phase, Creekmore fails here.

We distinguish our holding in this case regarding prejudice from our decision in State v. Fife (1981), ____ Mont. ____, 632 P.2d 712, 38 St.Rep. 1334, where, though the delay was shorter (194 days), the defendant was incarcerated 40 days in the county jail and 154 days in the state prison. That consideration, plus his evidence of anxiety, tipped the balance of the Barker test in Fife's favor. Those factors do not exist here. Fife's incarceration impaired his right to prepare his defense. Creekmore's defense was not impaired as far as the record here shows. The delay in Creekmore's case did not subvert, as far as we can determine, his right to a fair trial. In applying the Barker balancing tests, we take each case on its merits. Barker v. Wingo, supra, 407 U.S. 514, 530.

The second issue, the polygraph question, requires explanation.

Creekmore, in an attempt to obtain more money from the insurance company, told one of the insurance company's employees, Kathy Williams, that he had taken a polygraph examination through the Great Falls police and had been cleared of any wrongdoing. Williams attempted to verify the defendant's statements with the Great Falls police and was told that the defendant had failed to keep an appointment to take the polygraph examination. On direct examination at the trial, witness Williams testified, in effect, that "there was a statement made that he had taken a polygraph test," and that she had called Detective Warrington, and he related

to her that Creekmore had not taken such an examination. On cross-examination, witness Williams indicated that the statement actually had been made to her supervisor and that she was not present when the statement had been made or that she did not talk to Warrington. The State then called Detective Warrington who testified that in fact he had talked to Kathy Williams over the telephone about what Mark Creekmore had said, and Warrington reported that Kathy Williams had told him that Creekmore's statement was he had taken the polygraph test. Warrington further stated he had not taken such test.

Defendant contends that the admission of this evidence over his objection constituted hearsay, allowed polygraph testimony which is not ordinarily allowable in Montana, and that in effect it was a comment on his right not to testify.

The court, by jury instruction, cautioned the jury that the defendant need not testify and that the jury is not permitted to draw any inference from his failure to do so. Warrington's testimony was admissible to show that witness Williams had stated to him that she was directly involved in the conversation and to show that she had made a prior inconsistent statement. Rule 801(d)(1)(A), Mont.R.Evid. In jury argument, the State contended on this point only that Creekmore had lied to Kathy Williams in an attempt to get more money. By this the State intended to show Creekmore's state of mind with respect to the crime charged against him. We find no error on this point in the state of the record.

The judgment of conviction is affirmed.

John C. Sheehy
Justice

We Concur:

_Frank I. Haswell_
Chief Justice

_Jean C. Daly_

_____

_____
Justices