The prevailing parties will prepare an order in keeping with this opinion.

Mark CREEKMORE, Petitioner,

v.

DISTRICT COURT OF the EIGHTH JUDICIAL DISTRICT OF the STATE OF MONTANA, In and For the COUNTY OF CASCADE, Respondent.

No. CV–82–118–GF.

United States District Court, D. Montana, Great Falls Division.

Sept. 15, 1983.

---

Howard F. Strause, Great Falls, Mont., for petitioner.

Michael T. Greely, Atty. Gen., Helena, Mont., for the State of Mont., J. Fred Bourdeau, Cascade County Atty., Great Falls, Mont., for respondent.

## MEMORANDUM OPINION

HATFIELD, District Judge.

This cause is before the court on a petition for writ of habeas corpus filed by Mark Creekmore pursuant to 28 U.S.C. § 2254. Creekmore was convicted of the crime of deceptive practices, a felony, on June 18, 1981, after a jury trial in the District Court for the Eighth Judicial District of the State of Montana. Creekmore received a three year sentence, imposition of which was deferred upon his complying with certain conditions imposed by the sentencing court. Creekmore is currently under the supervision of the sentencing court pursuant to the terms of the foregoing judgment. Creekmore's conviction was affirmed on appeal by the Montana Supreme Court on January 5, 1982. *State v. Creekmore,* Mont., 640 P.2d 439 (1982).

Creekmore's petition is predicated on the assertion that the admission of certain testimony regarding his failure to take a polygraph test violated both his right to confrontation and his privilege against self-incrimination as guaranteed by the due process clause of the Fourteenth Amendment to the United States Constitution.

Having reviewed the record in this matter, I find that the petitioner was denied his right to confront the witnesses against him in violation of the due process clause of the Fourteenth Amendment. Accordingly, I find it appropriate to grant the petition for habeas corpus. I deem it unnecessary to discuss any remaining issues which have been raised.

FACTUAL BACKGROUND

The opinion of the Montana Supreme Court in *State v. Creekmore, supra,* sets forth the factual context in which the testimony at issue was elicited:

Creekmore, in an attempt to obtain more money from the insurance company, told one of the insurance company's employees, Kathy Williams, that he had taken a polygraph examination through the Great Falls Police and had been cleared of any wrongdoing. Williams attempted to verify the defendant's statements with the Great Falls Police and was told that the defendant had failed to keep an appointment to take the polygraph examination. On direct examination at the trial, witness Williams testified, in effect, that "there was a statement made that he had taken a polygraph test," and that she had called Detective Warrington, and he related to her that Creekmore had not taken such an examination. On cross-examination, witness Williams indicated that the statement actually had been

made to her supervisòr and that she was not present when the statement had been made or that she did not talk to Warrington. The State then called Detective Warrington who testified that in fact he had talked to Kathy Williams over the telephone about what Mark Creekmore had said, and Warrington reported that Kathy Williams had told him that Creekmore's statement was he had taken the polygraph test. Warrington further stated he had not taken such test.

*Id.* at 441–42.

## DISCUSSION

■ The first ground for relief asserted by Creekmore calls upon this court to consider the relationship between the Confrontation Clause and the rule of hearsay testimony. The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, *Pointer v. Texas,* 380 U.S. 400, 403–405, 85 S.Ct. 1065, 1067–69, 13 L.Ed.2d 923 (1965), preserves the right of a defendant in criminal proceedings to be confronted with the witnesses against him. The Confrontation Clause contemplates that direct confrontation of witnesses before a jury is the best means by which the accuracy of testimony can be tested. *See, Mattox v. United States,* 156 U.S. 237, 242–243, 15 S.Ct. 337, 339–40, 39 L.Ed. 409 (1895). This principle of confrontation is foundational to the integrity of the fact-finding process. *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1045–46, 35 L.Ed.2d 297 (1973), quoting *Berger v. California,* 393 U.S. 314, 315, 89 S.Ct. 540, 541, 21 L.Ed.2d 508 (1969).

■ Obviously, the Confrontation Clause has not been construed to prevent the introduction of all hearsay statements. *See, Mattox v. United States,* 156 U.S. at 244, 15 S.Ct. at 340. Nonetheless, the Clause was intended to exclude some hearsay. *Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980). The Supreme Court's observations in *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 are instructive:

While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception. *See Barber v. Page,* 390 U.S. 719 [88 S.Ct. 1318, 20 L.Ed.2d 255] (1968); *Pointer v. Texas,* 380 U.S. 400 [85 S.Ct. 1065, 13 L.Ed.2d 923] (1965). The converse is equally true: merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied.

*Id.* 399 U.S. at 155–156, 90 S.Ct. at 1933–1934.

One instance of the interplay between the hearsay rules and the Confrontation Clause, which has caused the courts some consternation, is the introduction of a prior inconsistent statement where the declarant, as a witness at trial, affirms the existence of the statement but is genuinely unable to recollect the underlying facts. *See* 4 J. Weinstein and M. Berger, WEINSTEIN'S EVIDENCE, § 801(d)(a)(a)[04] (1981). The matter *sub judice* presents such a situation.

Review of those portions of the trial transcript pertinent to the present petition reveals that the witness, *i.e.,* Kathy Williams, whose statements are the subject of dispute, suffered an apparent loss of memory at the time of trial. The loss of memory was obviously actual and was not feigned nor was it the product of recalcitrance on Williams' part. The issue becomes whether that actual loss of memory concerning the statements made by Creekmore to Williams affected Creekmore's right of cross-examination, so as to amount to a denial of his right to confrontation.

The issue, as framed, is identical to that left open by the Supreme Court in *California v. Green, supra:*

Whether [the witness'] apparent lapse of memory so affected [the defendant's] right to cross-examine as to make a critical difference in the application of the Confrontation Clause in this case is an issue which is not ripe for decision at this juncture.

399 U.S. at 168–169, 90 S.Ct. at 1940–1941.

A review of the transcript of Williams' testimony evinces that she suffered a genuine lapse of memory with respect to the ultimate event, *i.e.,* whether Creekmore actually told her that he had taken the polygraph test and passed. The State does not contend otherwise, but appears to contend that an actual loss of memory is not tantamount to a denial of the right to cross-examine. *See, United States ex rel. Thomas v. Cuyler,* 548 F.2d 460, 463 (3rd Cir.1977). The State would bolster its position by asserting that since Creekmore had the opportunity to thoroughly cross-examine Williams his right to confrontation was preserved. I cannot accept the State's proposition.

■ I concur with the opinion expressed by Judge Weinstein in his treatise on evidence, that prior statements of a witness who has no genuine recollection of the substance of a prior statement should be excluded as violative of the Confrontation Clause. J. Weinstein and M. Berger, WEINSTEIN'S EVIDENCE, *supra,* at 801–99. I find this conclusion is consistent with the Supreme Court's emphasis on the integral nature of cross-examination in the fact-finding process. *See, e.g., Ohio v. Roberts,* 448 U.S. at 63–66, 100 S.Ct. at 2537–2539; *California v. Green,* 339 U.S. at 157–158, 90 S.Ct. at 1934–1935. Preservation of that integrity is the primary objective of the Confrontation Clause. *See, Ohio v. Roberts,* 448 U.S. at 63, 100 S.Ct. at 2537.

■ Assessing the hearsay statements at issue here, it is obvious that the introduction of the testimony of Williams violated the principle of accuracy upon which the Confrontation Clause is bottomed. Because of the genuine lapse of memory suffered by Williams, Creekmore was unable to effectively cross-examine Williams concerning the accuracy of her recountal of the conversation between the two. The transcript of Williams' testimony reveals that Williams could absolutely not remember whether the critical statement, allegedly made by Creekmore, was made to her or to her supervisor. The notations taken by Williams failed to add any clarity. Creekmore was simply precluded from challenging the accuracy of Williams' recountal of the conversations. Accordingly, Creekmore was effectively denied his right to confront Williams before the jury.

The opinion of the Montana Supreme Court in *State v. Creekmore, supra,* failed to address the confrontation issue. The court relied solely on the rules of hearsay, particularly Rule 801(d)(1) of the Montana Rules of Evidence, in resolving the admissibility issue. In so doing, the court treated the rules of hearsay as congruent with the Confrontation Clause. Such a congruence, as previously noted, has never been recognized by the United States Supreme Court. *See, California v. Green,* 399 U.S. at 155–156, 90 S.Ct. at 1933–1934. The Confrontation Clause cannot be interpreted as countenancing the introduction of a hearsay statement, the accuracy of which a criminal defendant is unable to challenge.

The importance of the statement at issue to the State's case is evident. By the State's own admission, the statement went to intent; the most crucial element the State must prove in any criminal offense. The introduction of the statement can hardly be said to have constituted harmless error.

The petition for a writ of habeas corpus shall be granted.

An appropriate order shall issue.